*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0071p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

  *v.*

ROBERT JACKSON,

    *Defendant-Appellant.*

No. 09-1630

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00157-001—Janet T. Neff, District Judge.

Argued: November 30, 2010

Decided and Filed: March 24, 2011

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gary K. Springstead, SPRINGSTEAD LAW OFFICES, P.C., Fremont, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Gary K. Springstead, SPRINGSTEAD LAW OFFICES, P.C., Fremont, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

  SILER, Circuit Judge. Robert Jackson pled guilty to bank robbery pursuant to a plea agreement. Before his proffer interview, the government promised, "No statements made or other information provided by your client during such proffer and discussion will be used directly against your client in any criminal case." Jackson's

1

presentence report ("PSR"), however, later contained several of his proffer statements. These were initially used in calculating his guideline sentence range, and the court relied on them in determining his specific sentence. Jackson now challenges both his guideline sentence range and the specific sentence imposed. For the reasons stated below, we **AFFIRM** the decision of the district court.

## I.

An indictment was returned in the Western District of Michigan against Jackson and his co-defendant, Quentin Meux. The indictment stemmed from a bank robbery in which Meux and Glenn Porter entered a bank brandishing handguns and ordering everyone to the floor. Porter remained in the lobby of the bank, while Meux held a gun on the bank manager. Meux and Porter then fled with the money in a car driven by Jackson.

Jackson participated in a proffer interview, for which the government agreed, "No statements made or other information provided by your client during such proffer and discussion will be used directly against your client in any criminal case." He also executed a plea agreement in which he agreed to cooperate in the investigation of the bank robbery and other crimes. This agreement provided that, "The United States agrees that the statements made by the defendant during his cooperation will be protected as provided by Sentencing Guideline § 1B1.8."

Jackson pled guilty to bank robbery, pursuant to his plea deal. A PSR was then prepared for Jackson that contained information he provided during his proffer statement. The PSR revealed he was aware Porter possessed and used firearms during the robbery and that Jackson provided the gun Meux used. It also detailed other bank robberies in which Jackson had been involved, including one in which he entered a bank with a BB gun and another in which he drove the getaway car while Meux entered with a gun.

In calculating Jackson's guideline sentence range, the PSR assessed a six-level increase because Meux "otherwise used" a firearm by placing a gun to the bank

manager's head and a two-level increase for the physical restraint involved in the same conduct. This resulted in a total offense level of 29. Jackson's guideline range for imprisonment was 108 to 135 months.

Jackson objected to this increase. He argued the conclusion Meux's conduct was a "reasonably foreseeable act[] . . . in furtherance of the jointly undertaken criminal activity," USSG § 1B1.3(a)(1)(B), was impermissibly based on his proffer-protected statements. The government agreed and used an FBI agent to establish an independent basis for his guideline range increase. The district court then overruled Jackson's objection, holding "the information with regard to the use of the guns was obtained by law enforcement before Mr. Jackson's proffer." It sentenced Jackson to 120 months imprisonment, emphasizing that he 1) provided one of the guns used in the robbery, 2) had previously been a getaway driver for another armed bank robbery, and 3) participated in yet another bank robbery in which he entered with a BB gun. Jackson did not object to any of the information relied on by the court in determining his sentence.

## II.

Jackson argues his proffer-protected statements were impermissibly used to increase his guideline sentence range.

"Legal conclusions regarding application of the United States Sentencing Guidelines are reviewed *de novo*, while factual findings are reviewed for 'clear error.'" *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002) (citing *United States v. Raleigh*, 278 F.3d 563, 566 (6th Cir. 2002)).

United States Sentencing Guideline § 1B1.8 states,

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

This provision "forbids the government to influence the sentencing range by disclosing revelations by a defendant in the course of cooperation as required by a plea agreement." *United States v. Miller*, 910 F.2d 1321, 1325 (6th Cir. 1990).

In justifying Jackson's eight-level increase due to the actions of Meux, the PSR specifically noted "Jackson admitted he furnished the weapon that Mr. Meux used" and that he had participated in another bank robbery in which "[Jackson] covered employees and customers in the lobby of a bank." Had this information provided the basis for the enhancement that determined Jackson's ultimate guideline range, a violation of USSG § 1B1.8 would have occurred.

However, Jackson's guideline range can be sustained without the use of the impermissible proffer-protected information. The commentary to Sentencing Guideline § 1B1.3 specifically establishes Meux's conduct was reasonably foreseeable in setting out the following example:

> Defendant C is the getaway driver in an armed bank robbery in which $15,000 is taken and a teller is assaulted and injured . . . . Defendant C is accountable for the injury to the teller under subsection (a)(1)(B) because the assault on the teller was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

The PSR cited this illustration. Further, the government called an FBI agent to testify at the sentencing hearing to provide an independent source for the enhancement against Jackson.

Jackson also argues his guideline sentence increase is impermissible because, without the improper information initially relied upon in the PSR, he never would have received a higher guideline range, since the eight-level increase would never have been in issue. He further argues that the FBI agent's testimony was improper because it never would have been presented, but for his objection to the impermissible proffer information, which put the government on notice of its deficiency. Jackson, however,

cites no case holding a later, valid guideline enhancement improper because of an earlier, improper enhancement.  We therefore reject this contention.

Finally, Jackson argues he was given insufficient notice of the FBI agent's testimony being the factual basis for the enhancement.  Jackson maintains the information provided by the agent should have been contained in the PSR and it was a violation of Fed. R. Crim. P. 32 to allow the evidence to be presented for the first time at the sentencing hearing.

Jackson did not object to the FBI agent's testimony.  Nor did he seek a continuance to allow him time to prepare.  Further, Fed. R. Crim. P. 32 was not violated by allowing the agent's testimony.  According to Rule 32, "The presentence report must calculate the defendant's offense level and criminal history category."  Fed. R. Crim. P. 32(d)(1)(B). There is no requirement that every possible basis for determining the offense level be included, nor is there any provision preventing the government from introducing additional evidence concerning the offense level at the sentencing hearing. It is also unclear how Jackson was harmed by a lack of time to prepare for the agent's testimony.  Jackson himself conceded the very information to which the agent testified.

The district court's calculation of Jackson's guideline sentence range is **AFFIRMED**.

### III.

Jackson argues that not only does USSG § 1B1.8 preclude the use of proffer-protected information in determining the guideline sentence range, but that it also categorically precludes the use of proffer information in the PSR.  Therefore, Jackson asserts it was error for the district court to use the proffer information in determining his specific sentence of 120 months.  However, he did not make this objection at the district court when invited to do so, so we review only for plain error.  *See United States v. Vonner*, 516 F.3d 382, 391-92 (6th Cir. 2008) (en banc).

In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply.  *See, e.g.*, *United States v. Cole*, 418 F.3d 592, 597 (6th Cir. 2005)

(quoting *United States v. Martinez,* 69 F.3d 999, 1000 (9th Cir. 1995)). "The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (citations omitted). Here, the plain language of USSG § 1B1.8 specifically and unequivocally protects proffer statements from use "in determining the applicable guideline range." But the text also appears to be similarly unequivocal in its lack of any further protection for proffer statements.

The Commentary is similarly unhelpful to Jackson's position. First, Note 1 of the Commentary specifically precludes the government from withholding information from the court — something that would be required if Jackson's proffer information were to be omitted from the PSR. USSG § 1B1.8, note 1 ("This provision does not authorize the government to withhold information from the court."). Second, Note 5, on which Jackson relies, only speaks to the use of proffer-protected information in computing the guideline sentence range. USSG § 1B1.8, note 5 ("The guideline operates as a limitation on the use of such incriminating information in determining the applicable guideline range . . . .").

No Sixth Circuit case has reached a contrary result, while out-of-circuit opinion on this issue is split. *Compare United States v. Abantha*, 999 F.2d 1246, 1248 (8th Cir. 1996) (holding information disclosed to the government under a promise of confidentiality cannot be included in a PSR), *with United States v. Rourke*, 74 F.3d 802, 809 n.6 (7th Cir. 1996) (precluding the government from withholding relevant information from the sentencing court).[1]

We only review this issue for plain error, since Jackson failed to object at the district court. While we reserve ruling on the question of whether proffer-protected information can be used in determining a defendant's specific sentence, any error by the district court in this case is certainly not plain.

---

[1]Jackson suggests Fed. R. Crim. P. 32(d)(3)(B) also provides support for his position. However, since this rule merely precludes information from the presentence report obtained "upon a promise of confidentiality," and the Government's promise of confidentiality is defined by USSG §1B1.8, Rule 32(d)(3)(B) cannot possibly provide more protection than is provided by the guidelines.

The district court's determination of Jackson's sentence is **AFFIRMED**.

**AFFIRMED.**