RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 08-6372

WILLIAM A. COLEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20005-001—Samuel H. Mays, Jr., District Judge.

Argued: October 13, 2011

Decided and Filed: January 6, 2012

Before: ROGERS, COOK, and McKEAGUE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Needum L. Germany, III, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Kevin G. Ritz, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Needum L. Germany, III, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

COOK, Circuit Judge. William Coleman pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced him to 168 months' imprisonment. On appeal, Coleman challenges the district court's application

of two enhancements under the United States Sentencing Guidelines.  For the following reasons, we AFFIRM Coleman's sentence.

I.

Coleman robbed a branch of Suntrust Bank in Memphis, Tennessee, brandishing a BB pistol that resembled—and that victims believed to be—a 9mm handgun.  During the robbery, Coleman noticed Mike Sawyer, a bank employee, in an office adjacent to the bank lobby where Coleman stood.  Coleman pointed the pistol at Sawyer and ordered him to come out of his office and sit on the floor in the lobby.  Sawyer complied.

Coleman attempted to flee with the stolen money in a Ford Mustang driven by Trisha Jones.  When the police approached the Mustang, Jones stopped and jumped out of the vehicle.  Coleman then hopped into the driver's seat and drove off, hitting one of the police cars and injuring an officer.  After a brief foot chase, the officers apprehended Coleman.

A federal grand jury in the Western District of Tennessee charged Coleman with one count of bank robbery, in violation of 18 U.S.C. § 2113(a).  Coleman pleaded guilty, and the probation office prepared a Presentence Report ("PSR") using the 2006 edition of the United States Sentencing Guidelines Manual.  At the sentencing hearing, Coleman acceded to the facts in the PSR but objected to two sentencing Guidelines calculations included in it: a two-point enhancement under § 2B3.1(b)(4)(B) (applicable where a "person was physically restrained to facilitate commission of the offense") and a six-point enhancement under § 3A1.2(c)(1) (because the offense involved an "official victim").  The district court overruled both objections and assessed a total offense level of 33 with a criminal history category of V, resulting in a Guidelines imprisonment range of 210 to 240 months, as curtailed by the statutory maximum.  After considering the § 3553(a) factors, the court sentenced Coleman to 168 months' imprisonment and three years of supervised release.  Coleman timely appealed, challenging the district court's application of the § 2B3.1(b)(4)(B) and § 3A1.2(c)(1) enhancements.

II.

An appellate court reviews a district court's sentencing for reasonableness, conducting a two-part test. "It must first ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). *Gall* provides a non-exhaustive list of procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 51. "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence." *Id.*

Coleman does not challenge the substantive reasonableness of his sentence; rather, he challenges the procedural reasonableness of the district court's application of two Guidelines enhancements. The district court did not solicit additional, post-sentencing objections, preserving all of Coleman's procedural claims on appeal. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).

We review legal conclusions regarding application of the Guidelines de novo and factual findings in applying the Guidelines for clear error. *E.g.*, *United States v. Jackson*, 635 F.3d 205, 207 (6th Cir. 2011).

A.

Section 2B3.1(b)(4)(B) of the Guidelines provides for a two-level sentence enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." The commentary explains: "The guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up." U.S. Sentencing Guidelines Manual § 2B3.1 cmt. background ( 2006). Section 1B1.1 defines "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1 cmt. n.1(K).

The district court applied this enhancement because Coleman forced Sawyer from his office to the lobby at gunpoint. Coleman argues that Sixth Circuit case law requires "something more than briefly . . . waving a gun at a victim and telling him to get on the floor . . . to justify application of the enhancement." He further argues that the physical restraint enhancement does not apply because his conduct toward Sawyer involved neither "a physical component" nor a "sustained focus on the restrained person."

No published case from this circuit delimits the scope of § 2B3.1(b)(4)(B), although two of our cases mention the enhancement. *United States v. Lucas* noted the district court's speculation that the defendant who "herded the tellers at gunpoint and forced them to disrobe and remain in the vault or break room" might be subject to a § 2B3.1(b)(4)(B) enhancement. 889 F.2d 697, 699 (6th Cir. 1989). In the unpublished table opinion *United States v. Faulkner*, we expressly declined to limit this enhancement to cases where the defendant uses "some device such as a rope or handcuffs to restrain the victim." 188 F.3d 509 (6th Cir. 1999).

Both the plain language of the Guidelines and case law from other circuits suggest that the enhancement applies to Coleman's conduct. Section 1B1.1 defines "physical restraint" as "forcible restraint," USSG § 1B1.1 cmt. n.1(K), and *Black's Law Dictionary* defines "force" as "compel[ling] by physical means or by legal requirement," with the illustrative example "Barnes used a gun to force Jillian to use her ATM card." *Black's Law Dictionary* 718 (9th ed. 2009). "'[R]estraint' is commonly defined as '(1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls.'" *United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997) (quoting *United States v. Foppe*, 993 F.2d 1444, 1452 (9th Cir. 1993)). The Third, Seventh, and Eighth Circuits hold that a defendant physically restrains a person under § 2B3.1(b)(4)(B) when the defendant leaves the person with no alternative to compliance. *See United States v. Doubet*, 969 F.2d 341, 346–47 (7th Cir. 1992); *United States v. Kirtley*, 986 F.2d 285, 286 (8th Cir. 1993); *United States v. Copenhaver*, 185 F.3d 178, 180–82 (3d Cir. 1999). The Eleventh Circuit cited this

standard with approval, applying the enhancement because the mere "obvious presence of handguns ensured the victims' compliance and effectively prevented them from leaving the room" during a bank robbery. *United States v. Jones*, 32 F.3d 1512, 1519 (11th Cir. 1994).

Coleman relies on *United States v. Anglin*, 169 F.3d 154 (2d Cir. 1999), to oppose application of the enhancement. There "the bank robber brandished a gun, told the tellers to get down on the floor and not move, and they did so." *Id.* at 163. The Second Circuit held this conduct insufficient to trigger the enhancement. *Id.* at 165. Similarly, the D.C. Circuit holds that "the phrase 'being tied, bound, or locked up' [in the commentary to § 2B3.1] indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way." *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000); *see also United States v. Hickman*, 151 F.3d 446, 461–62 (5th Cir. 1998) (holding that the mere "pointing of a firearm at" a victim does not amount to "physical restraint").

But Coleman did not merely order Sawyer to sit down and remain in place; he forced Sawyer to walk out of his office and to a place where Coleman could better monitor his activities. Most circuit courts uphold the enhancement in similar robbery cases where a defendant limits a victim's freedom of movement by brandishing a firearm and compelling the victim to move from one location to another. *See, e.g.*, *Doubet*, 969 F.2d at 346–47; *Copenhaver*, 185 F.3d at 180–82; *Thompson*, 109 F.3d at 641–42 ("Thompson certainly checked [the victim's] free activity and otherwise controlled her actions. In short, he physically restrained her."); *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998) ("[O]rder[ing] a jewelry store employee and customer to the back room at gunpoint . . . constitutes physical restraint.").

Alternatively, Coleman urges the court to cabin the enhancement to cases with a "sustained focus on the restrained person" and a "physical component" to the restraint. Yet the policies underlying the enhancement counsel against such a narrow reading. As the Ninth Circuit explains:

> When a dangerous weapon is used to force a person to move about, that person has been physically restrained just as surely as if he was grabbed by the collar and pulled along. In fact, he may be even more restrained. If a miscreant lays hands on his victim, the victim has a fair chance of breaking loose and ending the restraint entirely. A victim looking down the barrel of a gun has much less of an opportunity.

*Thompson*, 109 F.3d at 641. We agree and view a "physical component" limitation as inapt.

We likewise reject Coleman's "sustained focus" requirement, which he derives from *United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001). There the Ninth Circuit found the enhancement inapplicable where a defendant ordered a victim to lie on the floor. The *Parker* court reasoned:

> [C]ases holding that a defendant physically restrained his victims usually involve a *sustained focus* on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere. . . .

> It is therefore likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint, given that nearly all armed bank robberies will presumably involve such acts.

*Id.* at 1118–19 (internal citations omitted). No other circuit has adopted *Parker*'s view, and our reading aligns with those circuits that read the text more broadly. Regardless, even if this court were to adopt *Parker*'s narrower reading of § 2B3.1(b)(4)(B), Coleman's conduct would still constitute "physical restraint," since *Parker* noted that the "sustained focus" need last only long enough "for the robber to direct the victim into a room or order the victim to walk somewhere." *Parker*, 241 F.3d at 1118.

In this case, Coleman used a pistol, in the words of the district court, to "require[] Mr. Sawyer to go to a different place and maintain position in a different place." Imposing this restraint on Sawyer's movement suffices for application of § 2B3.1(b)(4)(B) and we uphold the district court on this point.

B.

Coleman also challenges the district court's application of the "Official Victim" enhancement.  Section 3A1.2(c)(1) of the Guidelines provides, in relevant part, that a defendant's offense level should be increased by six levels if:

> (c) . . . in a manner creating a substantial risk of serious bodily injury, the defendant . . .
>
>> (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; . . .

USSG § 3A1.2(c)(1).  The Application Note to § 3A1.2(c)(1) further states:

> Subsection (c) applies in circumstances tantamount to aggravated assault . . . against a law enforcement officer, committed in the course of, or in immediate flight following, another offense . . . .  While subsection (c) may apply in connection with a variety of offenses that are not by nature targeted against official victims, its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a "substantial risk of serious bodily injury".

USSG § 3A1.2 cmt. n.4(A).

Coleman asserts that the enhancement is inapplicable because he acted "recklessly due to fear" rather than with "intent to cause bodily harm" when he rammed the police vehicle with his Mustang.  He hinges his interpretation of § 3A1.2(c)(1) on the commentary to § 2A2.2, which defines "aggravated assault" as "a felonious assault that involved . . . a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon."  But that commentary limits its reach to cases where aggravated assault is the base offense.  The commentary to § 1B1.1, which does not define "assault" or "aggravated assault," notes that definitions of terms appearing in other sections "are not designed for general applicability" and their relevance to other sections "must be determined on a case by case basis."

Unlike the commentary to § 2A2.2, neither the text of nor the commentary to § 3A1.2(c)(1) suggests an intent requirement.  On the contrary, § 3A1.2(c) requires only

that the defendant's conduct "creat[e] a substantial risk of serious bodily injury" to people that he knew or should have known were law enforcement officers. This phrasing evokes the common law definition of recklessness. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that risk."); Tenn. Code Ann. 39-11-302(c) ("[A] person . . . acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur."). The commentary to § 2A2.2 therefore fails to bolster Coleman's view.

When Coleman objected to the six-point enhancement at sentencing, the district court responded:

> I think the enhancement is appropriate under the circumstances before me. The only question I ever had about it was, was there an assault. And it appears to me there was. Mr. Coleman basically saw the car. *He knew the car was there* and he hit it. And, when he did, he injured the officer, who is a police officer. The car was there for a specific purpose, to try to keep him from endangering people's lives by continuing to drive 70 to 80 miles an hour through the streets of the city.

In the absence of grounds for viewing the district court's finding as clearly erroneous, we affirm the district court's conclusion that Coleman's conduct constituted an assault on a law enforcement officer.

### III.

For these reasons, we AFFIRM the district court's judgment.