**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0513n.06

No. 12-6023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 22, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| CEDRIC SMITH-HODGES, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |
| | ) | |

BEFORE:   COLE and McKEAGUE, Circuit Judges; ZOUHARY, District Judge.[*]

COLE, Circuit Judge.  Cedric Smith-Hodges challenges his 188-month sentence for being a felon in possession of a firearm.  He argues first that the district court committed a significant procedural error in calculating his guidelines range by misapplying a sentencing enhancement for physically restraining a victim.  He also argues that he was sentenced as an armed career criminal pursuant to an unconstitutionally vague provision of the Armed Career Criminal Act.  We affirm.

I.

Smith-Hodges and two associates robbed Brandon Loggins and Angel Mitchell at gunpoint as the pair left a nightclub in the early morning hours of February 17, 2009.  Loggins and Mitchell were about to enter their parked vehicle—Loggins on the driver's side and Mitchell on the passenger's side—when Smith-Hodges and another man approached on foot.  They were both

_____

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

armed; Smith-Hodges, for his part, brandished a pump-action shotgun. Smith-Hodges cocked it as he ordered Loggins to empty his pockets. With the shotgun still aimed at Loggins, Smith-Hodges "walked him to the curb" and forced him to lay on the ground near the passenger's side of the parked vehicle. The robbers then turned their attention to Mitchell, from whom they also demanded money. Loggins attempted to intervene but was told to remain face-down on the sidewalk or else be shot. The robbers eventually made off with a mere $137 for their trouble—all from Loggins. But the police caught up to them a short time later.

A federal grand jury indicted Smith-Hodges for being a convicted felon in possession of a firearm, *see* 18 U.S.C. § 922(g), and he pleaded guilty to the charge. The base offense level for violating the felon-in-possession statute is 24. *See* U.S.S.G. § 2K2.1. The presentence investigation report ("PSR") recommended several adjustments, including a two-level enhancement for physically restraining a victim in the course of the robbery. *See id.* § 3A1.3. The PSR also recommended a seven-level enhancement after deeming Smith-Hodges subject to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See* U.S.S.G. § 4B1.4. All told, Smith-Hodges was left with an offense level of 31 and a criminal history category of VI, which yielded a guidelines range of 188 to 235 months' imprisonment. At sentencing, Smith-Hodges objected to application of the physical-restraint enhancement and the ACCA. The district court overruled these objections, approved the guidelines calculation, and sentenced Smith-Hodges to 188 months' imprisonment followed by four years of supervised release.

II.

This appeal presents two questions. First, did the district court properly apply the two-level enhancement for physically restraining a victim during the course of the offense under § 3A1.3? Second, did the district court sentence Smith-Hodges as an armed career criminal pursuant to an unconstitutionally vague provision of the ACCA? We address each in turn.

A.

Smith-Hodges claims that the district court misapplied the physical-restraint enhancement, resulting in a higher guidelines range than the facts of his offense warranted. This is a challenge to the procedural reasonableness of his sentence, *see Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that a court commits procedural error by, among other things, improperly calculating the applicable guidelines range), which we review for an abuse of discretion. *Id.* In addition, we review the underlying findings of fact used to enhance his sentence for clear error and any legal conclusions regarding application of the guidelines de novo. *United States v. Jackson*, 635 F.3d 205, 207 (6th Cir. 2011).

Section 3A1.3 provides for a two-level enhancement to a defendant's base offense level "[i]f a victim was physically restrained in the course of the offense . . . ." Courts treat this provision as virtually indistinct from § 2B3.1(b)(4)(B), which similarly provides for a two-level enhancement "if any person was physically restrained to facilitate" a robbery. Both rely on a common definition of the term "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K). This seemingly tautological definition has produced considerable confusion among courts tasked with deciding the full range of conduct subject to the

physical-restraint enhancements. We have taken a more inclusive tack, treating the examples as a non-exhaustive list. In *United States v. Coleman*, 664 F.3d 1047 (6th Cir. 2012), our first and only case to squarely address this issue, we upheld the application of § 2B3.1(b)(4)(B) to a defendant who pointed his pistol at a bank employee during the course of a robbery and "ordered [the employee] to come out of his office and sit on the floor in the lobby," so the defendant "could better monitor [the employee's] activities." *Id.* at 1048, 1050. The brandishing of a firearm combined with the forced movement of the victim into a more vulnerable position was restraint enough. *See id.* at 1050-51.

Similar conduct justifies application of the physical-restraint enhancement here. The victim's uncontroverted testimony supplied all of the facts the district court needed to conclude that Loggins was "physically restrained" in light of our understanding of that term. *See id.* Loggins testified that Smith-Hodges "walked [him] over to the passenger's side of the car and made [him] lay down on the sidewalk . . . at gunpoint" during the course of the robbery. Loggins further testified that Smith-Hodges warned him to stay down or else be shot. These facts are not materially different than the facts in *Coleman*. In both cases, the victim was forced at gunpoint to move to a different, more vulnerable position and maintain it until the defendant could complete the robbery. *See id.* at 1048. And *Coleman* teaches that such acts taken together are sufficient to trigger the enhancement. *Id.* at 1050. Thus, the district court did not abuse its discretion in holding as it did: that Smith-Hodges "physically restrained" one of the victims when he "change[d] [Loggins's] position" at gunpoint and subsequently placed Loggins "in a position of disadvantage" on the ground.

Smith-Hodges resists this conclusion by attempting to distinguish *Coleman*. To his mind, Loggins "was not . . . moved from one location to another or required to maintain a position in a different place." But this cannot be squared with the facts accepted and relied upon by the district court. At sentencing, the district court expressly noted that Smith-Hodges "walked [Loggins] to the curb," told him to "get down on the ground," and directed him to stay down lest he get shot. And Smith-Hodges points to nothing in the record that would contradict this version of the events. Thus, the district court did not rely upon clearly erroneous findings of fact in applying the physical-restraint enhancement. *See Jackson*, 635 F.3d at 207.

It seems the true essence of Smith-Hodges's claim is that the physical-restraint enhancement requires an element of bodily contact or spatial confinement—in other words, something *physical*—not present here. Whether it does or not is a question that has divided the circuits. *Compare United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000) (noting that the language of the guidelines "indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way"), *and United States v. Anglin*, 169 F.3d 154, 164 (2d Cir. 1999) (concluding that "displaying a gun and telling people to get down and not move, without more, is insufficient to trigger the 'physical restraint' enhancement"), *with United States v. Taylor*, 620 F.3d 812, 815-16 (7th Cir. 2010) (reasoning that using a pointed gun to move a victim restrains that person's freedom of movement "as effectively as by shoving or dragging him into a room and locking the door"), *and United States v. Miera*, 539 F.3d 1232, 1234 (10th Cir. 2008) (holding that ordering the victims of a bank robbery to put their hands up and not move is sufficient). We gave at least a partial answer in *Coleman*—siding with the circuits that have adopted

a broader construction of the guidelines—when we held that the physical-restraint enhancement was properly applied to a defendant who restricted a victim's freedom of movement by compelling him to move at gunpoint into a more vulnerable position and maintain it. *See* 664 F.3d at 1050 (noting that a strict "'physical component' limitation is inapt"). And that is all that matters here; *Coleman* quite clearly dictates the outcome on the facts before us. Notwithstanding Smith-Hodges's assertion to the contrary, we need not confront the more difficult and as-yet unsettled question of whether the physical-restraint enhancement is properly applied to a defendant who merely aims his gun at a stationary victim and orders the victim not to go anywhere.

## B.

Smith-Hodges also makes the perfunctory claim that the district court sentenced him as an armed career criminal pursuant to an unconstitutionally vague provision of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), commonly called the "residual clause." As we have held on more than one occasion, *see, e.g.*, *United States v. Taylor*, 696 F.3d 628, 633 (6th Cir. 2012), such an argument is a non-starter in this circuit. Smith-Hodges concedes as much. Because we are bound by our prior decisions—not to mention those of the Supreme Court—we hold that the district court did not err in sentencing Smith-Hodges under the ACCA.

## III.

For these reasons, we affirm.