RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DAVID ABRAM ZIESEL,

*Defendant-Appellant*.

> No. 20-4240

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:19-cr-00662-1—James G. Carr, District Judge.

Argued: October 27, 2021

Decided and Filed: June 29, 2022

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Claire R. Cahoon, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant. Matthew D. Simko, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee. **ON BRIEF:** Claire R. Cahoon, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant. Matthew D. Simko, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.

STRANCH, J., delivered the opinion of the court in which DONALD, J., joined. ROGERS, J. (pp. 12–16), delivered a separate dissenting opinion.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.  David Ziesel pleaded guilty to bank robbery, and was sentenced to 46 months' imprisonment.  In this appeal, Ziesel challenges the district court's application of a two-level enhancement for "physical restraint" under § 2B3.1(b)(4)(B) of the United States Sentencing Guidelines (USSG or Guidelines).  Because neither the plain language of the Guidelines nor our case law supports application of the enhancement under the facts of this case, we **REVERSE** and **REMAND** for resentencing without the enhancement.

## I.  BACKGROUND

The facts in this case are undisputed.  Ziesel entered a bank wearing a mask and a hooded sweatshirt, approached the tellers, and said "give me all the money you have."  After the tellers emptied their drawers, Ziesel asked if they had a safe behind the counter.  The tellers responded that they did not.  At some point, "Ziesel told the tellers that 'no one was going to get hurt here.'"  Before leaving with the money, Ziesel told the tellers to get on the floor.  Ziesel did not have a weapon, nor did he imply he had a weapon.[1]

A federal grand jury indicted Ziesel on one count of bank robbery in violation of 18 U.S.C.  § 2113(a),[2] to which he pleaded guilty.  Following Ziesel's guilty plea, the presentence investigation report (PSR) used the 2018 Guidelines to determine that Ziesel's base offense level was 19.  Applying the two-level enhancement for "physical restraint" under USSG § 2B3.1(b)(4)(B), the PSR recommended a total offense level of 21, which when combined with

---

[1]While the plea transcript and the presentence investigation report both indicate Ziesel implied he had a weapon during the robbery, the parties later agreed that Ziesel did not imply he had a weapon.  The Government now maintains "there was no evidence to support that Ziesel implied he had a firearm at the time of the robbery." Appellee's Br. at 8.

[2]18 U.S.C. § 2113(a) states:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

a criminal history category of III, resulted in an imprisonment range of 46 to 57 months. Without the two-level, physical-restraint enhancement, the imprisonment range would have been 37 to 46 months. Ziesel objected to application of the physical-restraint enhancement.

At the sentencing hearing, the district court noted that application of the physical-restraint enhancement was "a close question" but, nevertheless, overruled Ziesel's objection and applied the enhancement. The district court reasoned that:

> the simple communication "This is a bank robbery" connotes a certain degree of potential harm, whether a weapon is shown or not, and certainly control is exercised by the robber. . . . And I think it actually involves a degree of movement, when you are standing upright, and then to be told to go into prone position by somebody who appears able to exercise substantial force over you. Whether in fact that turns out to be true or not, I don't think it matters.

Sentencing Tr. at 9-10.[3] The district court added that Ziesel was not armed, but:

> that doesn't change the fact that from the standpoint of the victims, they weren't about to ask "Show me the gun" before they showed you the money. They believed that you posed a clear and present danger to them. They obeyed your command. I do think that that involves restraint for the reasons I've stated.

*Id*. at 62-63.

Ziesel requested a downward variance to 37 months' imprisonment, and the Government requested either an upward variance or a sentence at the top of the applicable Guidelines range. The district court noted that it was not inclined to vary upward, but it did consider a downward variance of 37 months' imprisonment, as requested by Ziesel. Ultimately, the district court sentenced Ziesel to 46 months' imprisonment, at the bottom of the Guidelines range as calculated using the physical-restraint enhancement, and it did not make any alternative findings.

Ziesel timely appealed and now challenges the application of the two-level, physical-restraint enhancement. The Government maintains the district court's interpretation of the physical-restraint enhancement is correct, but, if it is not, any resulting error is harmless.

---

[3]The district court stated that Ziesel told the tellers "to go into prone position." Sentencing Tr. at 16. The record, however, does not provide this detail. Rather, the description of Ziesel's direction is only that he "ordered the tellers to the ground." *See* PSR ¶¶ 9, 19. And in digital video snapshots from the bank's surveillance tape, the teller who is visible in the snapshots appears to be squatting or kneeling behind the counter.

## II.  ANALYSIS

### A.  Standard of Review

Appellate courts review a district court's chosen sentence under the abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "To determine whether a district court abused its discretion, we look to whether the sentence is reasonable."  *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015).  Sentences are examined for procedural and substantive reasonableness.  *Id.*  "Whether the district court properly applied a sentence enhancement under the Guidelines is [ ] a matter of procedural reasonableness."  *Id.*  Whether the undisputed facts of a case "warrant the application of a particular guideline provision" is a question of law that is reviewed de novo.  *United States v. Snelling*, 768 F.3d 509, 512 (6th Cir. 2014) (quoting *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004)).  "At sentencing, '[t]he government bears the burden to establish enhancement factors, where contested.'"  *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (quoting *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir. 1989)).

Where a defendant timely objects to a sentencing error, Federal Rule of Criminal Procedure 52(a) applies, and the government bears the burden of showing that any such error was harmless.  *See Molina-Martinez v. United States*, 578 U.S. 189, 203 (2016).  "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless—*i.e.*, any such error 'did not affect the district court's selection of the sentence imposed.'"  *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

### B.  Physical Restraint Enhancement

Enhancements are a type of specific offense characteristic and are promulgated "for distinct and separate acts of violence in order to impose punishment based on the severity of the defendant's conduct."  *United States v. Perkins*, 89 F.3d 303, 308 (6th Cir. 1996).  The subsection of the Guideline at issue here is § 2B3.1(4), which contains two related enhancements addressing conduct involving abduction or restraint during the commission of a robbery:

(4)(A) If any person was abducted to facilitate commission of the offense or to facilitate escape, increase by 4 levels; or (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.

"Abduction" is the more serious conduct addressed by the enhancement, and it is not at issue in this case. *See United States v. Hill*, 963 F.3d 528, 530 (6th Cir. 2020) (remand to the district court to impose the two-level "physical restraint" enhancement instead of the four-level "abduction" enhancement because the victims, who were bound, were only moved to a different location within the store).

As we have previously explained: "Although the use of force or fear may be an element of the core offense conduct of robbery, physical restraint is not an element of the offense of robbery. Were it otherwise, the Guidelines would not list physical restraint in § 2B3.1 as a specific offense characteristic for robbery." *Perkins*, 89 F.3d at 308 (quoting *United States v. Rosario*, 7 F.3d 319, 321 (2d Cir. 1993)) (cleaned up). Accordingly, there must be something more than the existence of force or intimidation for the enhancement to apply.

The relevant conduct here involved Ziesel telling the bank employees to get on the ground. Ziesel did not have a gun, neither employee was touched, tied, bound, or locked up, and neither employee was instructed to move to another location. The question here is whether ordering the tellers "to the ground," without more, is conduct warranting the two-level enhancement. We begin with the plain language of the Guidelines. "Physically restrained" is defined as the forcible restraint of the victim such as by being "tied, bound, or locked up," USSG § 1B1.1, cmt. n.1(L), actions that did not occur here.

We have, however, previously addressed other conduct constituting "physical restraint" for purposes of § 2B3.1(b)(4)(B). In *United States v. Coleman*, 664 F.3d 1047 (6th Cir. 2012), we noted that "[m]ost circuit courts uphold the enhancement in similar robbery cases where a defendant limits a victim's freedom of movement by brandishing a firearm *and* compel[s] the victim to move from one location to another." *Id.* at 1050 (emphasis added). Coleman received the two-level enhancement for brandishing a BB pistol that resembled a handgun and for "order[ing] [the employee] to come out of his office and sit on the floor in the lobby" so the

defendant "could better monitor [the employee's] activities." *Id*. at 1048, 1050. Recently, in *United States v. Howell*, 17 F.4th 673, 692 (6th Cir. 2021), a bank robber received the enhancement after keeping a teller on the floor at gunpoint while verbally threatening to kill her if the other tellers did not quickly give him the money. In *Hill*, 963 F.3d at 530, the defendant received the enhancement where he "bound [employees'] wrists and ankles with zip ties" after forcing them at gunpoint into a different room in the back of the store. In *United States v. Smith-Hodges*, 527 F. App'x 354, 356 (6th Cir. 2013), we reasoned from *Coleman* that a two-level enhancement for physical restraint under USSG § 3A1.3 applied where the defendant pointed a gun at the victim and ordered him to move to the other side of his vehicle and lie on the ground during a robbery. The common thread in our cases when applying the two-level enhancement under § 2B3.1(b)(4)(B) requires that the victim's movements be sufficiently controlled or limited by the defendant by use of actual restraints ("tied, bound or locked up"), or by force or intimidation, actual or implied.

The district court applied the physical-restraint enhancement to Ziesel, reasoning that "the simple communication 'This is a bank robbery' connotes a certain degree of potential harm, whether a weapon is shown or not, and certainly control is exercised by the robber." Sentencing Tr. at 9-10. But almost all robberies necessarily entail the creation of fear and apprehension that may lead victims to "restrain" their movements in some way. Indeed, it is hard to imagine a circumstance where a bank robbery could take place without the robber communicating his intent to the victims or without engendering "fear and apprehension" to gain compliance. Construing the physical-restraint enhancement in this way would allow it to be applied in nearly all robberies, rendering it meaningless. The Second Circuit has "cautioned against interpreting the words 'physically restrained' in such a way that 'virtually every robbery would be subject to the 2-level enhancement for physical restraint unless it . . . involved a 'quixotic' robber who explicitly instructed the victims that they should 'feel free to move about' or leave during the robbery's commission." *United States v. Taylor*, 961 F.3d 68, 78 (2d Cir. 2020) (quoting *United States v. Anglin*, 169 F.3d 154, 165 (2d Cir. 1999)). Likewise, the district court's reasoning here improperly collapses the requirements of force, implied or actual, and "physical restraint," allowing the exception (the enhancement) to swallow the rule (the offense).

Because something more than fear of "potential harm" is necessary, and nearly all "physical restraint" will involve some control over a victim's movement, we turn to the specific actions in this case. No weapons, threats, or actual force were used by Ziesel, who ordered the tellers from a standing position to a squatting or kneeling position on the floor in the same location. Under our precedent, Ziesel's conduct does not warrant application of the enhancement.

The Government's argument does not compel a different outcome. It contends that "it should not matter if a defendant had no object at all, but was nonetheless able to create the same fear in a victim through his conduct that the victim similarly restrains himself or herself." Appellee's Br. at 18. In support of this contention, the Government relies on the Tenth Circuit's reasoning in *United States v. Rucker*, 178 F.3d 1369 (10th Cir. 1999). *Rucker* presented the question of whether applying the physical-restraint enhancement under § 2B3.1(b)(4)(B) with the "otherwise using" a firearm enhancement under § 2B3.1(b)(2)(B) constituted impermissible double counting by the district court where the enhancements both "stem[med] from a single act on [the defendant's] part." 178 F.3d at 1371. The Tenth Circuit reasoned that this would not constitute double counting because:

> . . . nearly every time one points a gun at a victim during a robbery, the pointing of the gun physically restrains the victim in some way. But this is not always the case: The robber might point a gun at a victim and tell him to "get out of here." Such would hardly physically restrain the victim. The converse scenario does not involve the required necessary overlap either: physically restraining a victim does not necessitate pointing a gun.

*Rucker*, 178 F.3d at 1373. To support its case against Ziesel, however, the Government cites *Rucker* for the proposition that a defendant's use of words only, without implication that the perpetrator has a dangerous weapon and without bodily contact, amounts to physical restraint as it is used in the Guideline. True, a gun is not required: examples of physically restraining someone without pointing a gun are plentiful, including the facts in *Rucker* where the physical restraint of a victim was "with rope." *Id.* at 1373; *see also Perkins*, 89 F.3d at 305 (noting physical restraint where the defendant "bound and gagged" the victims with duct tape). But neither *Rucker* nor any of our cases suggest that a mere verbal instruction to get on the

ground—without any change in location, use of actual restraints, or the threat, real or implied, of use of a dangerous weapon—constitutes physical restraint.

Finally, both the district court's and the Government's arguments improperly emphasize the reaction of the victims. The district court focused on the "standpoint of the victims," reasoning that restraint was involved in the present case because the victims "believed that [Ziesel] posed a clear and present danger to them. They obeyed [his] command." Sentencing Tr. at 36-37. The Government's argument similarly rests on the "fear and apprehension . . . engender[ed] in the victims" such that they restrained themselves. Appellee's Br. at 18. As noted above, "the Sentencing Guidelines list enhancements for distinct and separate acts of violence in order to impose punishment based on the severity of *the defendant's conduct*." *Perkins*, 89 F.3d at 308 (emphasis added). As the Seventh Circuit explained, "the victim's reaction does not determine whether there is or is not physical restraint." *United States v. Herman*, 930 F.3d 872, 876 (7th Cir. 2019).[4] The focus of the inquiry is on the defendant's action, not the victim's reaction.

In sum, the facts in this case do not involve "physical restraint" under either the plain language of the Guidelines or our case law. Finding the circumstances in this case to warrant application of the physical-restraint enhancement would improperly merge the offense with the

---

[4]The dissent attempts to fit Ziesel's conduct within the plain meaning of "physically restrained," while acknowledging that neither the Guidelines definition of the term, nor the listed examples, encompass Ziesel's conduct here. Dissent at 13. The dissent's reasoning runs aground because, like the district court, it focuses primarily on the viewpoint of the victim instead of on Ziesel's conduct. The elements of the robbery statute under which Ziesel was convicted include the taking of property by intimidation. 18 U.S.C. § 2113(a) ("whoever by force and violence, *or by intimidation* . . .") (emphasis added). By definition, robbery occurs when the perpetrator forces compliance through intimidation or threat of violence. The record reflects that Ziesel used intimidation to force compliance by the tellers. With the elements of the crime established, however, enhancements are used to punish "distinct and separate acts" based on the severity of the conduct. Every case cited by the dissent, from our circuit and others, involved either the use of a weapon by the defendant or the forced movement of the victims to a different location or to an enclosed space. The examples it provides of inappropriate application of the enhancement—ordering a teller to hand over the money or open the safe—downplay the broad application of the enhancement that would result from this approach. Dissent at 15. Undoubtedly, the dissent's approach would authorize application (or arguments for application) of the enhancement because, for example, the tellers would feel "physically constrained," or "vulnerable," or would suffer "mental distress" from feeling forced to follow the orders of the perpetrator. The problem is that such conduct has already been accounted for in the language of the robbery statute. It cannot be that every movement or act of compliance by the victim of a robbery should result in application of the "physically restrained" enhancement. The approach advocated by the dissent is broader than—and is not supported by—the plain language of the Guidelines or the caselaw.

enhancement. Accordingly, the physical-restraint enhancement does not apply to Ziesel's actions.

## C. Harmless Error

The Government contends that even if the physical-restraint enhancement does not apply in the present case, "any error was harmless." As noted above, "[t]here can be no harmless error unless the appellate court can determine from the record that the same sentence would be imposed on remand." *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009). The Government bears the burden of proof and "it must demonstrate 'to the [c]ourt *with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence.'" *Id.* (quoting *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007)).

The Government contends that it satisfied its burden by asking the district court "specifically whether the court would have imposed the same 46-month sentence either way, based on Ziesel's conduct in this case." Appellee's Br. at 24. It argues that the district court's reply that it believed the "sentence was appropriate [and] 'sufficient but not greater than necessary,'" establishes that the court "would have imposed the same sentence regardless of the" physical-restraint enhancement's application. *Id.* The relevant exchange is quoted below:

> THE COURT: May not be able to appeal it as a practical matter. You should, if it is possible, but if the lower end -- if the high end of the next low guideline range were 46 months, Ms. Cahoon, are you still able to appeal where the sentence might not be changed or would not be changed?
>
> MS. CAHOON: We are still able to appeal, Your Honor, because the sentence would be changed. If the Court did not impose the plus two, that the bottom of the guidelines would have been 37 months.
>
> THE COURT: Okay. Good. Great. Well, then by all means, appeal. Okay? That's right.
>
> MR. SIMKO: Your Honor, just for clarification on Ms. Cahoon's point there, would the sentence have been 46 months had the Court varied, does the Court think this is an appropriate sentence for the conduct in this case?
>
> THE COURT: I do. Okay? And, yeah, I will conclude with that generic statement "sufficient but not greater than necessary." I think this is the appropriate sentence.

Sentencing Tr. at 36-37. The Government contends that the district court's framing of the question above suggests that Ziesel's sentence "might not be changed or would not be changed," and that other statements by the district court support that interpretation. But key here is that the Government did not explicitly ask the question and the district court did not expressly state that it would impose the same sentence *with or without the enhancement*.

The Government also argues that "[t]he district court provided a separate, independent reason for this [c]ourt to uphold" Ziesel's 46-month sentence because the district court "concluded that whether the physical-restraint enhancement applied or not, a 46-month sentence was the appropriate sentence for Ziesel based on its assessment of the 18 U.S.C. § 3553(a) sentencing factors." Appellee's Br. at 23–24. This argument misses the mark for two reasons. First, one of the seven factors to be considered under § 3553(a) is the applicable Guidelines range. 18 U.S.C. § 3553(a)(4). Because the enhancement will not be applied on remand and Ziesel's Guidelines range will be different, application of the § 3553(a) factors will necessarily change as well. Accordingly, the § 3553(a) sentencing factors cannot be "independent" of the application of the physical-restraint enhancement.

In addition, the Government seeks an inference that the district court's choice of sentence imposed was appropriate for Ziesel's conduct based on its individualized assessment under the § 3553(a) factors. Such an inference is unwarranted. At sentencing, district courts are *required* to conduct individualized assessments of the § 3553(a) factors. *Rita v. United States*, 551 U.S. 338, 347–48 (2007). The mere act of complying with this requirement in the course of selecting a sentence does not guarantee that the same sentence would be imposed on remand, as is required for a finding of harmless error. Were that the case, nearly all sentencing errors would be deemed harmless.

Additional key factors weigh against finding harmless error here. First, the Supreme Court has noted that "[t]he Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious." *Molina-Martinez*, 578 U.S. at 199. "As the Court has recognized, 'when a Guidelines range moves up or down, offenders' sentences [tend to] move with it.'" *Id.* (quoting *Peugh v. United States*, 569 U.S. 530, 544 (2013)). Indeed, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's

ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."[5] *Id.* at 198. Ziesel's case falls precisely within the situation outlined in *Molina-Martinez*: the district court sentenced Ziesel using an incorrect Guidelines range that was higher than the one it should have used. This fact weighs against a finding of harmless error.

Second, the district court explicitly considered—although ultimately rejected—a downward variance to 37 months. *See* Sentencing Tr. at 25, 37, 41. This consideration is noteworthy given that a sentence that varies from the applicable Guidelines range requires the district court to provide sufficient additional justification for any variance. *Gall*, 552 U.S. at 47; *see also United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010) ("While the standard of review does not change based on whether a sentence is inside, just outside, or significantly outside the Guidelines range, the greater the district court's variance, the more compelling the evidence must be."). Had the Guidelines range been properly calculated, the district court may have been more inclined to impose a sentence of 37 months, which would have been the bottom of the applicable Guidelines range. The possibility of such an outcome is non-trivial, given that the district court sentenced Ziesel to the bottom of what it incorrectly believed to be the applicable Guidelines range. We cannot find "with certainty" that the error in calculating Ziesel's Guidelines range "did not cause [him] to receive a more severe sentence." *Gillis*, 592 F.3d at 699. The error of applying the physical-restraint enhancement was not harmless.

## III. CONCLUSION

We **REVERSE** the district court's application of the physical-restraint enhancement and **REMAND** for resentencing based on a recalculation of the sentencing range without the enhancement.

---

[5]In *Molina-Martinez* the Court addressed Rule 52(b) where the burden of proof rests with a defendant who fails to object to the error at sentencing. 578 U.S. at 197. In the present case, Rule 52(a) applies and Ziesel need not show "reasonable probability of a different outcome absent error." Rather, the Government bears the burden of establishing that any error was harmless. *See Molina-Martinez*, 578 U.S. at 203.

---

**DISSENT**

---

ROGERS, Circuit Judge, dissenting.  The district court properly applied the two-level § 2B3.1(b)(4)(B) sentencing enhancement based on Ziesel's physical restraint of the victims. The physical restraint enhancement applies "if any person was physically restrained to facilitate commission of the offense or to facilitate escape."  U.S.S.G. § 2B3.1(b)(4)(B).  Ziesel, wearing a hooded sweatshirt and a mask, ordered the tellers to get on the floor so he could escape.  A photo from a security camera indicates that at least one teller complied by crouching to the floor behind an enclosed desk as Ziesel reached a gloved hand across the desk towards her.  This put the teller in a constrained, physically vulnerable position that made it more difficult for her to move or escape, which is a physical restraint.  As a result, the enhancement was properly imposed here.

The enhancement applies "if any person was physically restrained."  This language is in the passive voice, but obviously refers to action by the defendant.  The defendant, in other words, must have imposed a physical restraint.  The modifier "physical" applies to the restraint imposed, not the means used by the defendant to impose the restraint.  Ziesel argues that the physical restraint enhancement cannot apply unless the defendant used a tangible object, such as a gun or a zip tie, to impose the restraint on the victims, but this argument conflates the nature of the imposition with the nature of the restraint.  Clear analysis (not to mention the clear purpose of the enhancement) requires that we distinguish between physical imposition and physical restraint.  The "physical" limitation is plainly on the nature of the victim's restraint rather than on the words, methods, or items used by the defendant.  This makes perfect sense.  Persons who are forced to the ground become physically restrained:  it is more difficult for them to move and will take more time to stand up, run, or otherwise react to the situation.  It is hard to imagine why else the victims would have been ordered to the ground.  Consequently, when Ziesel ordered the victims to the ground and at least one teller responded by crouching to the ground behind an enclosed desk, that teller was physically restrained under the plain meaning of the sentencing enhancement.  Indeed, Ziesel's counsel agreed at oral argument, in response to a hypothetical question, that the enhancement *would apply* if for instance a teller had complied with a verbal

order to handcuff himself or herself.  This effectively conceded that the focus is on the fact that the victim is placed in a (physically) restrained position, not on the (physical) way in which the robber forced the victim into that position.

On appeal, Ziesel argues that "physical restraint requires that the defendant bind, tie, or lock up the victims *or* compel their compliance with a weapon," neither of which occurred here. This argument is disposed of by the analysis above.  First, putting the victims in a physical position of incapacity and vulnerability is sufficient.  Second, compliance can be compelled without showing a weapon—in most robberies a forceful command is sufficient.  Caselaw supports each of these two propositions, as demonstrated below.  There is no reason not to apply both propositions in one case, merely because no cases are cited involving both.  Ziesel essentially argues that cases supporting each of these two propositions are distinguishable because the other proposition was not applied.  This makes no sense.

First, Ziesel imposed a sufficiently physical restraint by ordering the tellers to the ground, which restricted the victims' ability to move freely.  Nothing in the Sentencing Guidelines commentary suggests that physical restraint is limited to physical contact or physical imprisonment.  The relevant commentary does define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up."  U.S.S.G. § 1B1.1 cmt. 1(L). The use of the phrase "such as," however, indicates that this is not an exhaustive list of examples.  The Third Circuit recently noted that "we, along with many of our sister circuits, have held that the three examples provided in the definition of physically restrained are not an exhaustive list, but rather only examples of the types of conduct that fall within the meaning of the term." *United States v. Bell*, 947 F.3d 49, 55 (3d Cir. 2020); *see also United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013).  The Sentencing Guidelines commentary further notes that the physical restraint provision "provides an enhancement for robberies where a victim was forced to accompany the defendant to another location."  U.S. Sentencing Guidelines Manual § 2B3.1 cmt. background.  That example is additional evidence that the application of the enhancement is not limited to situations in which the defendant used a tangible object to tie up the victims.

Accordingly, we have held that the physical restraint enhancement does not require the use of a tangible item to tie or lock up the victims. In *United States v. Coleman*, 664 F.3d 1047 (6th Cir. 2012), we held that the physical restraint enhancement was properly applied where the defendant, while brandishing a BB gun that the victim believed to be a real gun, "pointed the pistol at [the victim] and ordered him to come out of his office and sit on the floor in the lobby." *Id.* at 1048. We noted that "our reading aligns with those circuits that read the text [of the enhancement] more broadly." *Id.* at 1050. The defendant had restrained the victim by "compelling the victim to move from one location to another" and "imposing this restraint on [the victim]'s movement." *Id.* at 1050-51. *Coleman* focused on the definition of "restraint" as "(1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls." *Id.* at 1049 (quotation omitted). Under that definition, Ziesel held back and controlled the activity of the victims by ordering them to the ground behind an enclosed desk, which made it more difficult for them to react or escape. More recently, we affirmed the application of the physical restraint enhancement when the defendant pointed a gun at the victim and "prevented [the victim] from continuing to move about by forcing [the victim] to lie on the floor, and [the defendant] used [the victim]'s life as leverage against her coworkers." *United States v. Howell*, 17 F.4th 673, 692 (6th Cir. 2021).

Cases from other circuits support the conclusion that forcing bank employees to the ground is comparable to being restrained by being tied or locked up. In *United States v. Dimache*, the Fourth Circuit affirmed the application of the physical restraint enhancement when the defendant "pointed the gun at the two other bank tellers present behind the counter and told them to get down on the floor." 665 F.3d 603, 604-05 (4th Cir. 2011). The Tenth Circuit has held that the enhancement applied when the defendants "brandished the guns at bank employees and ordered the employees to the floor." *United States v. Wade*, 719 F. App'x 822, 824, 827 (10th Cir. 2017). Finally, the Eleventh Circuit has held on multiple occasions that "holding or pointing a gun at the victims and directing them to get on the ground" is sufficient for application of the enhancement. *United States v. Chandler*, 699 F. App'x 863, 866 (11th Cir. 2017); *see also United States v. Hill*, 732 F. App'x 759, 765 (11th Cir. 2018).

Second, while it is true that in *Coleman* and the cases cited above the physical restraint was imposed in part by the defendants' use of a weapon, that is not a meaningful distinction. The *means* of imposing the restraint need not be through the use of a weapon—as explained above, the enhancement focuses on the physical position of the victim, not the objects the defendant may use to restrain the victim. For example, in *United States v. Victor*, the Eleventh Circuit held that the physical restraint enhancement applied even though the defendant did not use a gun or other item to restrain the victim and did not touch the victim. *See* 719 F.3d at 1290. The court concluded that "by threatening the lobby employee with what the employee believed to be a gun to prevent her from escaping" and by forcing her to walk a short distance, "Victor physically restrained her within the guidelines' meaning." *Id*. The emphasis was thus on the victim's physical position and sense of confinement, not on any physical objects used by the defendant. The Third Circuit also held that "[i]t is the perpetrator's act of enclosing or confining the victim in a space or with a barrier, actual or threatened, that constitutes the action meriting enhancement of the offense level." *United States v. Copenhaver*, 185 F.3d 178, 183 (3d Cir. 1999). Focusing on the physical position of the victims in this case makes it clear that due to the perceived threat from Ziesel, at least one teller crouched to the ground behind a desk, thus forcing the teller into a confined area in a vulnerable position. That is sufficient to apply the physical restraint enhancement here.

Finally, Ziesel argues that applying the physical restraint enhancement in this case would mean that the enhancement "would apply in most bank robbery cases." But as discussed, physical restraint refers to the physical position the victim is in, and it is possible for a bank robber to use words or give orders—and even display a weapon—in a way that does not put the victim in a physically vulnerable position. For instance, it would be different if a robber, with or without a gun, ordered a teller to be quiet, or to reveal a safe's combination, or to hand over the cash. These circumstances do not amount to physical restraint, unless "physical" is given some questionably broad definition that is not required to apply the restraint here. For example, the Tenth Circuit reasoned that a "robber might point a gun at a victim and tell him to 'get out of here,'" but "[s]uch [conduct] would hardly physically retrain the victim." *United States v. Rucker*, 178 F.3d 1369, 1373 (10th Cir. 1999). Crouching to the ground behind an enclosed desk, in contrast, is a physically constrained position that would make it more difficult for

victims to see what was transpiring, react quickly, or run away. It also imposes the mental distress inherent in being rendered vulnerable. That is the same outcome that would result from a robber's ushering the tellers or customers into a side room and locking the door, a situation in which the physical restraint enhancement is routinely applied. In short, applying the enhancement here would hardly necessitate applying it in many bank robberies in which the perpetrators use words, issue orders, or even display a firearm. In contrast, imposition of a real physical restraint occurred here, and that is the obvious import of the guideline.

The judgment of the district court should be affirmed.