RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

      *v.*

JEREMY PRUITT,

*Defendant-Appellant.*

No. 20-6121

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:19-cr-20183-1—Mark S. Norris, Sr., District Judge.

Decided and Filed:  June 14, 2021

Before:  WHITE, NALBANDIAN, and READLER, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Robert L. Thomas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  P. Neal Oldham, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

WHITE, J., delivered the opinion of the court in which READLER and NALBANDIAN, JJ., joined.  NALBANDIAN, J. (pp. 13–19), delivered a separate concurring opinion in which READLER, J., joined.  WHITE, J. (pg. 20), also responded to NALBANDIAN, J.'s concurrence.

───────────────

**OPINION**

───────────────

HELENE N. WHITE, Circuit Judge.  Defendant Jeremy Pruitt pleaded guilty to one count of being a felon in possession of a firearm.  He appeals his 92-month sentence, challenging

the district court's application of a six-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 3A1.2(c)(1) for assaulting an official victim.  Because the district court did not make sufficient factual findings or provide adequate legal analysis to permit review of the enhancement, we **VACATE** the sentence and **REMAND** for resentencing consistent with this opinion.

## I.

A grand jury indicted Pruitt for possessing a firearm after being convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  After Pruitt pleaded guilty without a plea agreement, the probation office prepared a presentence investigation report (PSR) and recommended a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for "assault[ing]" a police officer "in a manner creating a substantial risk of serious bodily injury."  Pruitt did not initially object to this enhancement but did later after obtaining a copy of footage from Officer Matthew Morton's body camera.

The district court held an evidentiary hearing to resolve Pruitt's objection.  Morton testified that he stopped the car in which Pruitt was a passenger because it was missing a back bumper.  As Morton approached, Pruitt, with a firearm visible in his hand, exited the vehicle and began to run away.  Pruitt fell while running and Morton yelled at him to drop the gun.  When Morton caught up to him, Pruitt attempted to grab Morton's service weapon while still holding his own firearm.  After a "tussle" over Morton's firearm "for a second" while Morton was simultaneously "trying with [his] other hand to keep from getting shot by [Pruitt's] other hand," Pruitt broke free and ran away.  R. 52, PID 198.[1]  As he was running away, Pruitt turned his body back towards Morton.  Morton, believing that Pruitt was about to shoot him, fired his weapon at Pruitt, striking him in the hand.  Pruitt fled but was apprehended a short time later in a nearby residence.  Morton sustained only a bruise on his arm that he does not attribute to the scuffle with Pruitt.

---

[1]Although the body-camera footage shows that Pruitt was holding his gun by the barrel, Morton testified that, at the time, he believed Pruitt was holding the gun "the way you traditionally hold the gun."  R. 52, PID 203.

Morton's body-camera footage was admitted into evidence. It shows Morton approaching the vehicle with Pruitt standing outside an open, rear passenger door. Morton commands Pruitt to "sit down" and "get back in the car," but Pruitt takes off running and falls after a few steps. Morton catches up to Pruitt while commanding him to "get on the ground" and "drop the gun." Pruitt says, "all right, sir, all right," but gets up from the ground. Pruitt's hand can be seen holding his gun by the barrel. Pruitt's other hand appears to grab Morton's service weapon by the barrel, and Pruitt and Morton grapple with each other for approximately three seconds. Pruitt then breaks free. Morton continues to yell, "drop the gun," and Pruitt responds, "all right, sir," as he runs away. Pruitt takes only a few strides before appearing to turn back towards Morton. Gunshots are then heard, and Pruitt rotates away from Morton and flees. It is not clear from the video if Pruitt ever pointed his firearm at Morton or repositioned his firearm to hold it by the grip. The time that elapses from when Morton and Pruitt initially begin grappling to when the gunshots are heard is about five seconds.

The district court overruled Pruitt's objection to the six-level enhancement. As a result, Pruitt's total offense level was 23. With a criminal-history category of VI, Pruitt's Guidelines range was 92–115 months. The district court imposed a sentence of 92 months' imprisonment.

## II.

Pruitt challenges the district court's application of the six-level enhancement under U.S.S.G. § 3A1.2(c)(1), commonly referred to as the official-victim enhancement. We review a district court's factual findings underlying a sentencing enhancement for clear error and its legal conclusions de novo. *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). Although the standard of review we apply to a district court's application of the Guidelines to the facts "is somewhat murky," we recently concluded that our review of the application of U.S.S.G. § 3A1.2(c)(1) to the facts of a given case should be deferential. *Id.* (footnote and citations omitted).[2]

---

[2]As in *Abdalla*, 972 F.3d at 850 n.2, the parties do not address the ambiguity in our caselaw. Pruitt does not identify a standard of review for the application of the Guidelines to the facts, and the government states that the proper standard gives due deference to the district court's application of the Guidelines to the facts. Because our

Section 3A1.2(c)(1) of the Guidelines provides, in relevant part, for a six-level increase in a defendant's offense level "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . [,] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." The Application Note to this section provides, in relevant part:

> Subsection (c) applies in circumstances tantamount to aggravated assault . . . against a law enforcement officer, committed in the course of, or in immediate flight following, another offense . . . . While subsection (c) may apply in connection with a variety of offenses that are not by nature targeted against official victims, its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a "substantial risk of serious bodily injury".>
>
> . . . .
>
> <"Substantial risk of serious bodily injury" includes any more serious injury that was risked, as well as actual serious bodily injury (or more serious injury) if it occurs.>

U.S.S.G. § 3A1.2 cmt. n.4(A)-(B).

Pruitt first argues that the official-victim enhancement does not apply because "he did not commit a reckless assault, nor a reckless aggravated assault" on Officer Morton. Appellant's Br. at 12. He looks to Tennessee law for the definition of those offenses and argues that because Morton did not sustain an injury as a result of Pruitt's conduct, no assault was involved. Pruitt asserts that we should apply Tennessee's definitions of reckless assault in determining whether the enhancement applies because doing so is consistent with *United States v. Coleman*, 664 F.3d 1047 (6th Cir. 2012). And because Tennessee reckless aggravated assault requires bodily injury, Pruitt reasons, so must the official-victim enhancement. We disagree.

In *Coleman*, Coleman hit a police car with his vehicle, injuring an officer, while fleeing from a robbery he had committed. 664 F.3d at 1048. We rejected his argument that intent to cause bodily injury is required for application of the official-victim enhancement. *Id.* at 1051. Coleman asserted that U.S.S.G. § 3A1.2(c)(1) should be interpreted using § 2A2.2's definition of

---

conclusion would be the same "under any plausible form of deferential review, we need not determine the precise review standard." *Id.*

aggravated assault, which includes a physical injury requirement,[3] but we declined to do so because § 2A2.2's "commentary limits its reach to cases where aggravated assault is the base offense," and the Guidelines provide that "definitions of terms appearing in other sections 'are not designed for general applicability' and their relevance to other sections 'must be determined on a case by case basis.'" *Id.* (quoting U.S.S.G. § 1B1.1 cmt. n.2). We explained that "[u]nlike the commentary to § 2A2.2, neither the text of nor the commentary to § 3A1.2(c)(1) suggests an intent requirement." *Id.* We further observed that because "§ 3A1.2(c) requires only that the defendant's conduct 'creat[e] a substantial risk of serious bodily injury' to people that he knew or should have known were law enforcement officers," it "evokes the common law definition of recklessness." *Id.* (alteration in original). In support, we cited as examples *Farmer v. Brennan*'s explanation of what constitutes recklessly disregarding a risk of serious harm, 511 U.S. 825, 836 (1994), and Section 39-11-302(c) of the Tennessee Annotated Code, which defines "reckless." *Coleman*, 664 F.3d at 1051. From this brief citation to Tennessee's statutory definition of "reckless," Pruitt argues that we should apply Tennessee's reckless-aggravated-assault statute, Tenn. Code Ann. § 39-13-102(a)(1)(B), and caselaw holding that bodily injury is an element of that offense, *see State v. Rush*, 50 S.W.3d 424, 430 (Tenn. 2001), in determining whether Pruitt's conduct warrants the enhancement.

We reject Pruitt's argument that *Coleman* requires application of Tennessee's reckless-aggravated-assault statute to determine whether the official-victim enhancement applies. *Coleman* merely cited Tennessee's definition of "reckless" to support its conclusion that "creating a substantial risk of serious bodily injury" under U.S.S.G. § 3A1.2(c)(1) "evokes the common law definition of recklessness." 664 F.3d at 1051. Nothing in *Coleman* suggests that Tennessee's reckless-aggravated-assault statute provides the standard for determining whether the official-victim enhancement applies. Additionally, we hesitate to conclude that state law controls the definition of this federal sentencing guideline, *cf. United States v. Thompson*, 597 F. App'x 318, 320 (6th Cir. 2015) ("We have our doubts that state law controls the definition of

---

[3]The commentary to U.S.S.G. § 2A2.2 defines "aggravated assault" as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1.

'felonious assault' for purposes of § 2A1.2."), "especially given 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" *United States v. Olson*, 646 F.3d 569, 573 n.3 (8th Cir. 2011) (quoting 18 U.S.C. § 3553(a)(6)).[4]

Further, there is no support in the language of § 3A1.2(c)(1) for a bodily-injury requirement. As Pruitt recognizes, we have previously explained, albeit in unpublished opinions, that bodily injury is not required for the enhancement to apply. *United States v. Thomas*, No. 17-5513, 2018 U.S. App. LEXIS 6078, at *6 (6th Cir. Mar. 9, 2018) (stating that "[n]either intent to inflict injury nor an actual injury is required" to apply the official-victim enhancement); *see also United States v. Snowden*, 602 F. App'x 294, 297 (6th Cir. 2015) (affirming application of official-victim enhancement for pointing a firearm at police officers); *United States v. Roush*, 527 F. App'x 349, 354 (6th Cir. 2013) ("By its terms, § 3A1.2 can apply regardless of whether an officer sustains serious injuries. . . . [Section] 3A1.2 is focused on the *risk* of bodily injury . . . .").

Thus, we reject Pruitt's arguments that bodily injury is a prerequisite to application of the official-victim enhancement.

Pruitt's next argument is somewhat unclear, but it concerns the proper definition of "assaulted" for purposes of this enhancement. *See* U.S.S.G. § 3A1.2(c)(1) ("If in a manner creating a substantial risk of serious bodily injury, the defendant . . . [,] knowing or having reasonable cause to believe that a person was a law enforcement officer, *assaulted* such officer during the course of the offense or immediate flight therefrom." (emphasis added)). Pruitt appears to read *Coleman* as conflicting with other circuits, which have addressed the mens rea required for assault by looking to the common law. *See* Appellant's Br. at 22 ("Coleman says that there is no intent requirement, which means that the common law definition of 'assault' is

---

[4]In any event, as the government accurately observes, even if Tennessee aggravated assault provides the proper standard for application of the enhancement, that offense does not require bodily injury where the defendant acts intentionally or knowingly, as the government argues Pruitt did here. A defendant can be convicted of aggravated assault in Tennessee if he intentionally or knowingly "causes another to reasonably fear imminent bodily injury," Tenn. Code Ann. § 39-13-101(a)(2), while using or displaying a deadly weapon, *id.* § 39-13-102(a)(1)(A)(iii). *See United States v. Gillespie*, 713 F. App'x 471, 476-78 (6th Cir. 2017) (discussing Tennessee aggravated assault).

inapplicable because it requires an intent to instill fear."). It is not clear whether Pruitt believes the enhancement should be interpreted using the common-law understanding of assault, but he ultimately argues that the district court's findings are insufficient to support the enhancement under that standard.

We do not read *Coleman* as holding that § 3A1.2(c)(1) has no intent requirement, or that a mens rea of recklessness satisfies the assault element of the official-victim enhancement, even when no injury is inflicted. *See Abdalla*, 972 F.3d at 852 ("For the § 3A1.2(c)(1) assaulting an officer enhancement, the defendant must (1) intend to assault another person, (2) know that this person is an officer, and (3) recklessly create a substantial risk of injury."). Coleman drove a car into a police vehicle, injuring a police officer. 664 F.3d at 1051. Coleman asserted that § 3A1.2(c)(1) was "inapplicable because he acted 'recklessly due to fear' rather than with 'intent to cause bodily harm.'" *Id.* As explained above, Coleman derived the asserted intent-to-cause-bodily-harm requirement from § 2A2.2, which expressly states such a requirement but which the court determined to be inapplicable to this enhancement. *Coleman*'s statement that "neither the text of nor the commentary to § 3A1.2(c)(1) suggests an intent requirement," *id.*, is addressed to rejecting Coleman's argument that intent to cause bodily harm is required for the enhancement to apply. Intent to cause bodily harm is not a stated requirement of the enhancement; what is required is an assault under the requisite circumstances. *Coleman*'s only discussion of assault occurs later in the opinion, where the court concludes without elaboration that because the district court's factual finding—that the defendant drove his car into a police vehicle knowing it was there—was not clearly erroneous, the defendant's conduct constituted assault. *Id.* at 1051-52. This is consistent with the Model Penal Code's definition of assault. Under the Model Penal Code, a defendant commits assault if he or she

> (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> (b) negligently causes bodily injury to another with a deadly weapon; or
>
> (c) attempts by physical menace to put another in fear of imminent serious bodily injury.

Model Penal Code § 211.1(1). Thus, *Coleman*'s rejection of an intent requirement is limited by its context: when injury has occurred and the evidence supports a finding of purposeful, knowing or reckless conduct that "causes bodily injury to another." *Id.*

Further, the government does not argue that Pruitt recklessly assaulted Morton. It argues that because "assault" is undefined in this guideline section and its commentary, other circuits have looked to the common-law meaning of criminal assault to interpret the official-victim enhancement's assault element, *see United States v. Gonzales*, 931 F.3d 1219, 1221-22 (10th Cir. 2019); *United States v. Young*, 910 F.3d 665, 672 (2d Cir. 2018); *United States v. Jones*, 740 F.3d 127, 138 (3d Cir. 2014); *Olson*, 646 F.3d at 572-73; *United States v. Hampton*, 628 F.3d 654, 660-61, 663 n.2 (4th Cir. 2010); *United States v. Robinson*, 537 F.3d 798, 802-03 (7th Cir. 2008); *United States v. Lee*, 199 F.3d 16, 17-18 (1st Cir. 1999), and that because Pruitt's conduct meets the common-law definition of criminal assault, the enhancement applies. *See* Appellee's Br. at 10 ("Other courts have properly looked to the common law meaning of assault to define the term for purposes of § 3A1.2(c)(1)."). We have followed this approach in other contexts, *see United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) ("Because [18 U.S.C.] § 113 does not define 'assault,' courts give the term its established common law meaning." (citing *United States v. Turley*, 352 U.S. 407, 411 (1957))), *abrogated on other grounds by Borden v. United States*, 593 U.S. __ (2021)), and agree with our sister circuits that it is appropriate to do so here.

The common law generally recognized two types of criminal assault: (1) an attempted battery, i.e., an intentional attempt to injure another person; and (2) "an act which is intended to, and reasonably does, cause the victim to *fear* immediate bodily harm; such 'menacing' constitutes assault even if no physical harm is attempted, achieved, or intended." *Lee*, 199 F.3d at 18 (citation omitted); *see also Verwiebe*, 874 F.3d at 261 (explaining that the common law criminalized "(1) willfully attempting to inflict injury on another person or (2) threatening to inflict injury on another person, causing a reasonable apprehension of immediate bodily harm" (citing *United States v. Hathaway*, 318 F.3d 1001, 1008 (10th Cir. 2003))); *cf.* Model Penal Code § 211.1(1) (defining simple assault similarly but adding other alternatives where bodily injury results).

We agree with Pruitt that the district court failed to make findings adequate to enable us to determine whether application of the enhancement is proper. After the evidentiary hearing, the district court asked the parties for argument about whether Pruitt's conduct constituted assault. The parties then presented their respective positions, and the district ordered supplemental briefing, stating:

> We have a video. I see what we see, but I am interested in the legal argument about assault, aggravated assault and as applied to the facts of this case. It is of some note the Defendant did not drop or leave the weapon. I mean, it goes to [the government's] point about his flight and then stopping flight, turning around.
>
> There's a scuffle of some sort, of some degree, but the Defendant's weapon is not discarded at that moment but retained, as I saw it. So there's some interesting issues that we may have some case law to address out of an abundance of precaution. I think that's the best course of action.

R. 52, PID 211.

The parties submitted their briefs. Pruitt primarily argued that the enhancement does not apply because he did not point his weapon at, threaten, or injure Morton, and Pruitt was holding his gun by the barrel the whole time. The government primarily argued that the enhancement applies because the evidence supports an inference that Pruitt was attempting to use his firearm against Morton. The probation office submitted an addendum to the PSR, summarizing the parties' positions and agreeing with the government's position, in part because it took the view that Pruitt raised his firearm after breaking free, an assertion not relied on by the government.

At the sentencing hearing, the district court identified by docket number the parties' briefs and the probation office's supplement and stated:

> And so I've carefully considered all of the foregoing and have reviewed the transcript of the officer's testimony again, based upon the body-cam footage, which has been admitted into evidence here as well, and I find by a preponderance of the evidence that the six-point enhancement is appropriate under the circumstances of this case. The Defendant assaulted the law enforcement officer in this manner, in a manner creating a substantial risk of serious bodily injury to the police officer.
>
> [*United States v. Hill*, 583 F.3d 1075 (8th Cir. 2009)] is cited, as I recall, by [the government] for comparison purposes. I find that [*Coleman*, 664 F.3d 1047, and

*Thomas*, 2018 U.S. App. LEXIS 6078, are] particularly instructive here in finding as I do, which returns us to the total offense level of 23.

R. 53, PID 221.

Later, in imposing the sentence, the district court commented on the offense conduct and stated:

Because it would be—I'd certainly be well within my rights to impose the 115 months, particularly where you had the police officer involved, you had the weapon involved. It would have been so easy for you, once you fell or stumbled to just stop. If you really didn't want to commit any further harm, rather than getting up and running and keeping your gun, there are all kinds of things, and you alluded to that, Mr. Pruitt, in your allocution there, that you sure could have handled that situation better than to do what you did. That scuffle, that assaultive behavior, hanging on to your own gun, getting up and running, stopping and turning, all serious errors on your part, but you shouldn't have been in this position to begin with.

I think [the government] may have used the term frightening here, the way this played out and to hear the testimony and watch the body-cam footage, I think it wasn't much more than 12 seconds of actual interaction. It happened so fast, and different witnesses remember things slightly differently in the heat of the moment. I think Officer Morton said he hadn't seen the video, the body-cam footage maybe for a year or so since he had previously looked at it.

*Id.* at PID 242.

The district court's decision does not make clear why it found the enhancement applied. This is particularly so given the different factual findings and legal theories proposed by the parties. We cannot tell, for example, whether the district court found, as the government argued below, that Pruitt attempted to use his firearm on Morton; whether, as the government argues on appeal, Pruitt intentionally caused Morton to fear imminent bodily injury by stopping and turning and by grabbing Morton's service weapon; whether the district court accepted Pruitt's argument that reckless aggravated assault under Tennessee law is required, but found that the evidence supported this finding; or whether, as the probation office suggested, the court found that Pruitt attempted to use his firearm when he raised it while fleeing, a fact not apparent from the video evidence. We do not know whether the district court found that the requisite assault creating a substantial risk of serious harm occurred when Pruitt grappled with Morton and sought to grab

his firearm, or whether it occurred when Pruitt turned towards Morton while running away, and, if so, whether the district court found Pruitt raised his weapon or repositioned it to hold it by the grip. And we do not know what the district court found Pruitt's intent was with respect to any of his actions. In sum, although the district court referred to "assaultive behavior," we do not know what conduct the district court determined constituted the assault element of the enhancement and why the district court found that conduct met the definition of assault.

Finally, although the body-camera footage does not capture all the relevant details and is at times blurry, the government argues that the video establishes the facts necessary to support the enhancement because it shows that Pruitt had a firearm, fled to avoid arrest, attempted to take Morton's firearm from him, and turned back toward Morton while fleeing. The government asserts that these facts are similar to those in *Hill*. But in *Hill*, the Eighth Circuit upheld the district court's assault determination based on the factual findings that

> [t]he defendant was attempting to draw a weapon in order to discharge that weapon at the officer . . . . The defendant stopping, turning towards the officer as he attempted to draw the weapon creates a clear inference that the defendant was attempting to use that weapon against the officer and that he would have done so had he been successful in extracting that weapon from his waistband.

583 F.3d at 1079-80. Because the Eighth Circuit determined that "these factual determinations are not clearly erroneous" it "conclude[d] that Hill's actions were assaultive in nature." *Id.* at 1080; *see also Olson*, 646 F.3d at 574 (affirming assault finding where "the district court made a finding about Olson's intent"). But we have no similar factual findings here, so we are unable to determine whether the enhancement was properly applied. *See Gonzales*, 931 F.3d at 1224 ("The government contends that even if it had needed to show a subjective intent to instill fear, we should find this intent. But we are not the factfinder; the district court was, and it made no finding on Mr. Gonzales's intent."); *United States v. Anderson*, 416 F. App'x 533, 538 (6th Cir. 2011) (vacating sentence and remanding where although facts "*could have supported* a finding that [a co-defendant] knew, or had reason to believe that he was firing at law enforcement, . . . the district court *did not in fact* make these findings"); *United States v. Mills*, 1 F.3d 414, 423 (6th Cir. 1993) ("Absent a finding about defendants' knowledge, however, we are unable to judge the propriety of the [official-victim enhancement]."); *United States v. Range*, 982 F.2d

196, 198 (6th Cir. 1992) ("For this court to perform its function properly, . . . the record developed below must indicate with specificity what facts the district court considered in reaching its offense level calculation.").

In sum, the district court did not make the requisite factual findings, and its legal analysis is unclear. Accordingly, we must vacate the application of the official-victim enhancement. On remand, the district court should set forth the specific facts it finds by a preponderance of the evidence and explain why those facts establish an assault as contemplated by the official-victim enhancement.

VACATED and REMANDED for resentencing consistent with this opinion.

---

**CONCURRENCE**

---

NALBANDIAN, Circuit Judge, concurring. I agree with my colleagues that the best course of action is to remand for more factual findings. I write separately to express why I agree that *Coleman* does not address the "assault" prong of the enhancement and highlight another way this case may fit comfortably inside common-law assault. If the district court makes the necessary factual findings on remand, applying the enhancement could be in order.

**I.**

To begin, the U.S.S.G. § 3A1.2(c)(1) enhancement requires three elements. The defendant[1] must—

1. Act "in a manner creating a substantial risk of serious bodily injury." § 3A1.2(c).
2. Know "or hav[e] reasonable cause to believe that a person was a law enforcement officer." *Id.* at (c)(1).
3. Assault the law enforcement officer "during the course of the offense or immediate flight therefrom." *Id.*

The enhancement is improper if any element is missing. For example, simply resisting arrest without creating a risk of bodily injury does not trigger the enhancement because the first prong is not met. *See United States v. Iron Cloud*, 75 F.3d 386, 390 (8th Cir. 1996). Likewise, assaulting an undercover officer without knowing his status fails the second prong. *See United States v. Mills*, 1 F.3d 414, 423 (6th Cir. 1993). And making serious threats to an officer over the phone fails the third prong because it is not assault. *United States v. Klump,* 21 F.3d 1117, 1994 WL 143943, at *2 (9th Cir. 1994) (unpublished table decision).

Given the enhancement's structure, we should not read *Coleman*'s comments without looking into the specific prong that *Coleman* was interpreting. *Coleman* states that "neither the text of nor the commentary to § 3A1.2(c)(1) suggests an intent requirement" in the context of the first and second prongs. *United States v. Coleman*, 664 F.3d 1047, 1051 (6th Cir. 2012). In fact,

---

[1]Or "a person for whose conduct the defendant is otherwise accountable." § 3A1.2(c).

*Coleman* does not even list the third prong when reciting the relevant factors. *Id.* ("On the contrary, § 3A1.2(c) requires only that the defendant's conduct 'creat[e] a substantial risk of serious bodily injury' to people that he knew or should have known were law enforcement officers." (alteration in original)). Taken uncritically, this would be precedent for ignoring the assault requirement altogether. But on deeper review, it's clear the court was responding to Coleman's argument that his acting "recklessly due to fear" meant that he did not fall within the "aggravated assault" definition in another section, which required "intent to cause bodily injury." *Id.* That is, he was arguing that the first prong had a latent intent requirement. The *Coleman* court had no reason to delve into the definition of "assault," and I read it as holding that the substantial-risk and law-enforcement prongs do not have an intent requirement.

This reading of *Coleman* does not transgress our circuit's binding precedent rules. Broad statements that happen to touch on issues not litigated are not precedential because the court did not "consider[] the issue and consciously reach[] a conclusion about it." *Wright v. Spaulding*, 939 F.3d 695, 702 (6th Cir. 2019). In *Coleman*, whether assault requires intent "lurk[ed] in the record, neither brought to the attention of the court nor ruled upon." *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir. 2004)). So by reading *Coleman* as binding only on the issues it considered, we are not rejecting it for any "analytical flaws," a move that would be inappropriate outside en banc review. *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003).

**II.**

The next issue is the meaning of "assault." Because the guideline here does not define assault, our goal is to "give the term its ordinary meaning." *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021) (quoting *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013)). Finding statutory definitions to guide us is difficult, as the Eighth Circuit noted, because the federal code does not go out of its way to define "assault." *United States v. Olson*, 646 F.3d 569,

573 (8th Cir. 2011).  In fact, though many federal laws prohibit assault in one form or another, they rarely define the crime.[2]

To start, we have dictionary definitions.  Black's Law Dictionary says that assault is threatening or using force that causes a "reasonable apprehension of imminent harmful or offensive contact."  *Assault*, *Black's Law Dictionary* (11th ed. 2019).  It also may include attempting to batter with the "specific intent to cause physical injury," and causing physical injury "intentionally, knowingly, recklessly, or with criminal negligence."  *Id.*  Webster similarly defines it as "a violent attack" or "an unlawful threat or unsuccessful attempt to do physical harm to another, causing a present fear of immediate harm."  *Assault, Webster's New World College Dictionary* 85 (5th ed. 2020).  The Fourth Circuit summarized the common meaning of assault as "synonymous with 'attack.'"  *United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010).

The Sentencing Guideline commentary linking this enhancement with "circumstances tantamount to aggravated assault" should not send us scrambling for definitions of aggravated assault to add into the mix.  U.S.S.G. § 3A1.2 cmt. n.4(A).  In the district court, Pruitt tried to use the "aggravated assault" language in Note 4(A) to interpret the word "assault" in the guideline itself.  But while commentary can help explain a guideline when it is "genuinely ambiguous," the guideline text itself is authoritative, and we should follow its plain meaning when the tools of interpretation make it clear.  *Riccardi*, 989 F.3d at 485–86.  As I discuss below, "assault" is not ambiguous.  So swapping out "assault" for "aggravated assault" would be improper.  But here we need not go as far as to say that the commentary is wrong.  Instead, I read it as using "aggravated assault" as a shorthand for prongs one and three: an assault creating a substantial risk of serious bodily injury.  Importing more elaborate definitions of aggravated assault is unnecessary and would use the commentary to change the guideline's substance.

---

[2]*See, e.g.*, 18 U.S.C. § 1389 (assaulting servicemen or their families); 18 U.S.C. § 111 (assaulting federal officers and employees); 18 U.S.C. § 115 (impeding federal officials by threats or injury); 42 U.S.C. § 2283(b) (assaulting nuclear inspectors); 18 U.S.C. § 2116 (assaulting a postal clerk).  The Uniform Code of Military Justice does define assault:  "Any person subject to this chapter who, unlawfully and with force or violence-- (1) attempts to do bodily harm to another person; (2) offers to do bodily harm to another person; or (3) does bodily harm to another person; is guilty of assault and shall be punished as a court-martial may direct."  10 U.S.C. § 928(a).

Although definitions can be useful, studying assault's deep common-law roots better illuminates the details of what counts as assault. Other circuits have looked at the common law to decide what counts as assault. *See, e.g.*, *United States v. Lee*, 199 F.3d 16, 17 (1st Cir. 1999).[3] As these circuits have noted, common-law assault includes two crimes: attempted battery and intentionally causing fear of immediate bodily harm.[4] But most of these cases did not deal with attempted-battery assault because of either the lack of intent to harm or lack of physical contact required for battery.[5] So they focused on assault as the intentional infliction of fear.

But because attempted and completed battery also encompass assault, we cannot skip over this type of assault when the facts of the case support finding attempted-battery assault. So while I agree that we should remand this case for further findings on what kind of assault Pruitt might have committed, I would clarify that both attempted and completed battery suffice for applying the assault enhancement.[6] I come to this conclusion based on 1) the common-law relationship between assault and battery, 2) the breadth of common-law battery, and 3) the lack of an applicable common-law defense.

The difference between the two types of common-law assault traces to a disagreement about what makes an assault a crime.[7] Some courts and commentators wrote that the criminal intent to batter, manifested in the attempt, is what makes an assault an indictable offense. 2 John Green, *Criminal Law Reports* 271–75 (1875). Mere intent to cause fear, they argued, was only a civil offense. *Id.* But others noted that the harm to the victim—being put in fear—is the same

---

[3]*See also United States v. Gonzales*, 931 F.3d 1219, 1221–22 (10th Cir. 2019); *United States v. Young*, 910 F.3d 665, 672 (2d Cir. 2018); *United States v. Jones*, 740 F.3d 127, 138–39 (3d Cir. 2014); *Olson*, 646 F.3d at 572–73; *Hampton*, 628 F.3d at 660–61.

[4]*See Gonzales*, 931 F.3d at 1221; *Young*, 910 F.3d at 672; *Jones*, 740 F.3d at 139; *Olson*, 646 F.3d at 573; *Hampton*, 628 F.3d at 660; *Lee*, 199 F.3d at 18.

[5]*See Gonzales*, 931 F.3d at 1221; *Jones*, 740 F.3d at 139; *Olson*, 646 F.3d 574; *Lee*, 199 F.3d at 18.

[6]As I note later, the Fourth Circuit has already held as much. *See Hampton*, 628 F.3d at 661 ("In light of our conclusion that a completed battery satisfies § 3A1.2(c)(1)'s assault requirement and the district court's findings of fact, it is clear to us that the district court did not err in concluding that Hampton assaulted Atkinson when he struggled with him while resisting arrest.").

[7]*State v. Shepard*, 10 Iowa 126, 130 (1859) ("If the question were governed solely by the intent of the defendant, such an act would not be considered as amounting to an assault, and on the other hand, if it were governed by the probable and natural effect on the person aimed at, or by the tendency of the act to induce a breach of the peace, it would properly be regarded as such.").

whether or not the aggressor intended to carry out his threat.    Joel Prentiss Bishop, *Commentaries on the Criminal Law* 32 (2d ed. 1859).[8]

So the claim "every battery includes an assault" is true in one sense of "assault" but not the other.  1 William Oldnall Russell, *A Treatise on Crimes and Misdemeanors* 863 (1819).[9] With intent-to-scare assault, physical harm or offensive touching does not necessarily also include putting another in fear—for example, if the victim does not see the battery coming.[10] But with attempted-battery assault, every completed battery necessarily involves an attempt at the final result.[11]   Fear is irrelevant; assault would be possible even if the victim were oblivious.[12]  In this sense, every intentional personal injury includes assault.[13]  On this basis, the Fourth Circuit held that "battery of a law enforcement officer was intended to and in fact does satisfy U.S.S.G. § 3A1.2(c)(1)'s assault requirement."  *Hampton*, 628 F.3d at 661.

The district court and the government properly considered attempted battery to determine whether Pruitt assaulted Officer Morton.  The district court cited *United States v. Thomas*, which involved a defendant's attempt to harm an officer rather than scare him.  No. 17-5513, 2018 U.S. App. LEXIS 6078, at *6 (6th Cir. Mar. 9, 2018).  And it referred to the "scuffle" and "hanging on to [his] gun, getting up and running, stopping and turning" as "assaultive behavior."  And the government argued that Pruitt was trying to shoot Officer Morton after breaking free.  So the district court and the government were right about attempted-battery assault. Shooting an officer would be battery,[14] so trying to do so is assault.

---

[8]*See also State v. Archer*, 54 P. 927 (Kan. Ct. App. 1898).

[9]*See also* 1 Edward Hyde East, *A Treatise of the Pleas of the Crown* 406 (1806); 1 William Hawkins, *A Treatise of the Pleas of the Crown* 110 (8th ed. 1824).

[10]Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) (3d ed. 2020).

[11]At least, intentional batteries include assault. A reckless battery, however, would not include the intent necessary for an *attempted* battery because recklessness does not involve the intent to cause harm. *See* LaFave, *supra* note 9, at § 16.1(a) n.6.

[12]*People v. Lilley*, 5 N.W. 982, 985 (Mich. 1880); *Chapman v. State*, 78 Ala. 463, 465 (1885).

[13]Henry Roscoe et al., *Roscoe's Digest of the Law of Evidence in Criminal Cases* 295 (7th Am. ed. 1874).

[14]LaFave, *supra* note 9, at § 16.2(a).

But the court and the parties seemed to focus on the *attempt* to shoot, not considering whether Pruitt had battered the officer during the scuffle. Perhaps that's because this case adds a wrinkle to traditional battery: Pruitt did not intentionally come in contact with Officer Morton. In fact, Pruitt was running away when he tripped and Morton grabbed him. So if Pruitt committed a battery, it cannot be from initiating contact with the officer.

But common-law battery arguably includes Pruitt's other conduct—Pruitt did not merely try to escape the officer's grasp; he also took hold of the officer's gun. Pruitt acknowledged this fact in his brief before the district court. And Officer Morton testified that Pruitt was "pulling" on the gun, "trying to get" the gun away from the officer. In his appellate brief, Pruitt again acknowledged that the video evidence showed him grabbing Officer Morton's gun.

Trying to grab a gun is a battery even if Pruitt did not touch the officer in the process. The common law has long recognized that battery does not require a direct touching of someone's body. Anything that is "attached to the per[s]on, partakes of its inviolability." *Respublica v. De Longchamps*, 1 U.S. (1 Dall.) 111, 114 (1784). So striking a cane that someone is holding counts as battery. *Id.* at 111, 114. The same goes for grabbing someone's coat, *United States v. Ortega*, 27 F. Cas. 359, 360–61 (C.C.E.D Pa. 1825) (No. 15,971), or cutting a rope tied to their body, *State v. Davis*, 19 S.C.L. (1 Hill) 46, 46–47 (1833). A more recent case held that knocking a flashlight out of an officer's hand counted as "intentional touching or application of force to the person" of an officer. *State v. Ortega*, 827 P.2d 152, 154 (N.M. Ct. App. 1992).[15]

Finding that grabbing the gun was battery would not require that Pruitt be trying to cause any significant injury. Although we often call battery "injury" or "harm," it includes all offensive touching. East, *supra* note 8, at 406. That includes "jostling" someone out of the way, even though it does not cause an injury. Russell, *supra*, at 863. And it wraps in "any injury whatsoever, be it never so small," like spitting in someone's face. Hawkins*, supra* note 8, at

---

[15]Civil battery cases also support the idea that items held in the hand are part of the victim's body for battery purposes. *See, e.g.*, William L. Prosser, *Handbook of the Law of Torts* 33 (3d ed. 1964); Restatement (Second) of Torts § 18 (Am. L. Inst. 1965); *Morgan v. Loyacomo*, 1 So. 2d 510, 511 (Miss. 1941) ("[K]nocking or snatching anything from plaintiff's hand or touching anything connected with his person, when done in a rude or insolent manner, is sufficient."); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967) ("The intentional snatching of an object from one's hand is as clearly an offensive invasion of his person as would be an actual contact with the body.").

110. In sum, when we say that attempted battery requires intent to injure, the traditional approach includes intent to commit "offensive touchings" as well. LaFave, *supra* note 9, at § 16.3(a) n.16.

And Pruitt's attempt to grab Officer Morton's gun is not justified by the officer first grasping him. "[I]f by personal violence a man undertakes a defen[s]e he has no right to make . . . — as where he resists a lawful arrest . . . — he commits an assault." Bishop, *supra*, at 37 (footnotes omitted). For self-defense to be "no assault or battery in the law," it must be "lawful." East, *supra* note 8, at 406.

As a final note, even though offensive touching alone counts as battery, and thus assault, that does not mean the enhancement would apply to a mere offensive touch. The enhancement also requires that the assault be done in "a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c). That requirement keeps this severe enhancement from applying in situations when the defendant merely shoves an officer while absconding or otherwise commits battery that does not endanger an officer. On remand, the district court will need to grapple with this required finding as much as the assault finding, since both are necessary.

In sum, in addition to the other common-law sense of assault, the district court should consider the fight for the gun—a battery—as grounds for finding an assault. I would not decide the case on this ground on appeal because no party has argued the point yet. While the government noted that Pruitt had tried to take Officer Morton's gun, it only argued that the act implied that Pruitt wanted it to be easier to shoot Officer Morton. I would leave it to the district court to look at the facts in the first instance. I concur in remanding the case.

―――――――――――

**RESPONSE**

―――――――――――

HELENE N. WHITE, Circuit Judge, concurring.   Judge Nalbandian's concurrence advocates applying the completed-battery form of assault from the broad common-law definition of battery that includes an offensive touching.   Concurring Op. at 18-19 (Nalbandian, J.).   This differs from the prevailing modern approach reflected in the Model Penal Code, which "limit[s] battery to instances of physical injury."   Wayne R. LaFave, *Substantive Criminal Law* § 16.2(a) (3d ed. 2020) (footnote omitted); *see also id.* § 16.2(a) n.6 ("Model Penal Code § 211.1 covers only causing 'bodily injury,' on the ground that 'offensive touching is not sufficiently serious to be made criminal, except in the case of sexual assaults as provided' elsewhere in the Code." (citations omitted)); Model Penal Code § 211.1.   As Judge Nalbandian's concurrence notes, neither party briefed a completed-offensive-touching theory of assault before the district court or this court.   I would not, therefore, adopt this definition without the benefit of briefing by the parties or a decision by the district court.