NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0251n.06

No. 21-6042

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 01, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| JEREMY PRUITT, | ) |
| Defendant-Appellant. | ) OPINION |
| | ) |

Before: WHITE, NALBANDIAN, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant Jeremy Pruitt pleaded guilty to possessing a firearm after being convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court applied the six-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 3A1.2(c)(1) for assaulting an official. In a previous appeal, we concluded that the district court failed to make clear why the enhancement applied; accordingly, we vacated Pruitt's sentence and remanded for resentencing. *United States v. Pruitt* (*Pruitt I*), 999 F.3d 1017 (6th Cir. 2021). At resentencing, the district court again applied U.S.S.G. § 3A1.2(c)(1). Pruitt appeals, arguing that the district court erred in its application of U.S.S.G. § 3A1.2(c)(1). We AFFIRM.

**I.**

Pruitt pleaded guilty without a plea agreement to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The probation office's presentence

investigation report recommended a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for "assault[ing]" a police officer "in a manner creating a substantial risk of serious bodily injury." Pruitt objected after obtaining a copy of the body-camera footage from the police officer involved, Officer Matthew Morton.

At an evidentiary hearing on Pruitt's objection, Morton testified that Pruitt held a gun in his hand when he encountered Morton, that Morton engaged in a scuffle with Pruitt, and that Pruitt grabbed Morton's loaded service weapon during the scuffle. Pruitt then fled, and Morton believed that the gun was being held "the way you traditionally hold [a] gun," *i.e.*, by the grip. R.52 PID 203. As he ran away, Pruitt turned his body back towards Morton and Morton shot him in the hand. Morton testified that he believed that had he not shot Pruitt first, Pruitt would have shot him. Officers arrested Pruitt shortly thereafter.

Morton's body-camera footage shows Pruitt holding a gun by the barrel, running away from Morton, and ignoring Morton's commands to "get on the ground" and "drop the gun." *See* R.47-1 Bodycam Footage at 0:37–40. Pruitt then stops and seems to grab Morton's service weapon by the barrel. The two grapple for approximately three seconds before Pruitt breaks free. After a few strides, Pruitt appears to turn back towards Morton and gunshots go off. Pruitt then continues to flee. The footage does not clearly show whether Pruitt pointed his firearm at Morton.

The district court overruled Pruitt's objection to the U.S.S.G. § 3A1.2(c)(1) enhancement. Relying on Morton's testimony and the body-camera footage, it found "by a preponderance of the evidence that the six-point enhancement is appropriate under the circumstances of this case. [Pruitt] assaulted the law enforcement officer . . . in a manner creating a substantial risk of serious bodily injury to the police officer." R.53 PID 221. Regarding the offense conduct, the district court added: "That scuffle, that assaultive behavior, hanging on to your own gun, getting up and

running, stopping and turning, all [were] serious errors on your part, but you shouldn't have been in this position to begin with." *Id.* PID 242. The district court sentenced Pruitt to 92 months' imprisonment.

On appeal, we held, among other things, that the district court's statement failed to make clear "what conduct the district court determined constituted the assault element of the enhancement and why the district court found that [the] conduct met the definition of assault." *Pruitt I*, 999 F.3d at 1025. For example, we could not determine "whether the district court found that the requisite assault creating a substantial risk of serious harm occurred when Pruitt grappled with Morton and sought to grab his firearm, or whether it occurred when Pruitt turned towards Morton while running away, and, if so, whether the district court found Pruitt raised his weapon or repositioned it to hold it by the grip." *Id.* We vacated the sentence and remanded for resentencing, instructing the district court to "set forth the specific facts it finds by a preponderance of the evidence and explain why those facts establish an assault as contemplated by the official-victim enhancement." *Id.*

On remand, the district court again concluded that U.S.S.G. § 3A1.2(c)(1)'s six-level enhancement applies. It found that Pruitt "intentionally or knowingly caused Officer Morton to apprehend [im]minent bodily injury based upon the following facts, which have been established by a preponderance of the evidence," R.66 PID 327, explaining:

> there was a scuffle between Mr. Pruitt and Officer Morton . . . during which Mr. Pruitt grabbed Officer Morton's loaded service weapon. . . . Mr. Pruitt fled with his own gun in hand after scuffling with Officer Morton and grabbing for Officer Morton's service weapon. As he fled, Mr. Pruitt stopped and turned with his gun in hand, all of which based upon Officer Morton's testimony caused him to apprehend that [Pruitt] would use the weapon against Officer Morton had he not shot Mr. Pruitt.
>
>     . . . .

3

. . . [T]here are any number of times during the facts of this case that Mr. Pruitt could have done something differently to mitigate the officer's apprehension obviously had there not been a tussle or a scuffle as there was and that's not disputed. . . . Had Mr. Pruitt not grabbed Officer Morton's gun, regardless of which part of the gun he grabbed at the time he grabbed the gun, it might be different, but there's no question that he did grab the gun. . . . When he got up to run, to flee, the flight involved here, had he left his gun behind perhaps that would have been different but he didn't. Had he responded appropriately to the officer's commands, which the facts in evidence here show he did not, the outcome might be different, and had he not stopped and turned. We know he didn't leave the gun behind. We know he had the gun. But he stopped and turned in the direction of the officer.

After all of that, the cumulative effect causes the appearance to become the reality here and what Officer Morton testified about concerning his apprehension of [im]minent bodily injury. All the facts are there.

*Id.* PID 327, 329–30. The district court further determined that Pruitt's "decision to turn around and face the officer under the circumstances . . . would lead a reasonable person in Officer Morton's circumstances to apprehend [im]minent bodily injury, which he did." *Id.* PID 331. The district court again imposed a 92-month sentence.

Pruitt appeals, arguing that the district court erred in its application of U.S.S.G. § 3A1.2(c)(1). Specifically, he contends that the district court failed to examine his intent to cause reasonable fear of imminent bodily injury.

**II.**

A challenge to the application of the Sentencing Guidelines invokes clear-error review of factual findings, de novo review of legal conclusions, and deferential review of the application of an enhancement to a given fact pattern. *Pruitt I*, 999 F.3d at 1019–20; *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020).

Guidelines Section 3A1.2(c)(1) imposes a six-level increase on a defendant's offense level "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . [,] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such

officer during the course of the offense or immediate flight therefrom." It "applies in circumstances tantamount to aggravated assault . . . against a law enforcement officer, committed in the course of, or in immediate flight following, another offense." U.S.S.G. § 3A1.2 cmt. n.4(A). "[I]ts applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a 'substantial risk of serious bodily injury.'" *Id.*

Pruitt identifies three ways of interpreting the term "assault," reciting its definitions under Tennessee law, the Model Penal Code, and the common law. He argues that, regardless of the definition we choose, "they all include an element of intent" that the district court failed to address and that the government failed to prove. Appellant Br. at 19, 26. The "intent" to which he refers concerns the criminal-assault element requiring the intent to cause the victim to fear immediate bodily harm. *Pruitt I*, 999 F.3d at 1023. From this, Pruitt makes two arguments: First, that the district court "focused almost exclusively on Officer Morton's testimony regarding his own apprehension of fear" to the exclusion of Pruitt's intent; and, second, that the preponderance of the evidence does not show that Pruitt's conduct was "for the purpose of intentionally causing" fear of imminent bodily injury. Appellant Br. at 23; *see* Appellee Br. at 17–18.

The record belies Pruitt's first argument as the district court twice expressly observed that Pruitt had the requisite intent. After hearing the parties' arguments on Pruitt's objection to the application of § 3A1.2(c)(1), the district court expressly concluded that Pruitt "acted in a manner that created a substantial risk of bodily injury, which *intentionally or knowingly* caused Officer Morton to apprehend [im]minent bodily injury" as established "by a preponderance of the evidence." R.66 PID 327 (emphasis added). Then, it recited the three aforementioned ways to define assault and determined that, under "all three," the "facts established by a preponderance of the evidence that Pruitt *acted with such intent or knowledge* and caused Officer Morton, according

5

to his own testimony, to apprehend getting shot when confronted by the Defendant with a gun after this physical altercation." *Id.* PID 328–29 (emphasis added). Pruitt fairly notes the district court's principal concern over Morton's "apprehension of fear." However, notwithstanding such concern, the district court did not overlook assault's intent element.

Pruitt's second argument concerns the weight of the evidence and fares no better. The district court noted several choices Pruitt made which, together, were indicative of his criminal intent. Pruitt "grabbed Officer Morton's gun, regardless of which part of the gun he grabbed at the time he grabbed the gun." *Id.* PID 329–30. He failed to leave his gun behind when he got up to flee, and he did not "respond[] appropriately to the officer's commands." *Id.* PID 330. He also "stopped and turned in the direction of the officer" while holding a gun. *Id.* Pruitt asserts that he "was simply trying to flee" and "avoid . . . being shot." Appellant Br. at 24. Having reviewed the record, we cannot say the district court erred in making its factual findings or applying law to fact. *See Abdalla*, 972 F.3d at 850–51. Its conclusion that the preponderance of the evidence demonstrated that Pruitt intended to cause fear of imminent bodily injury is adequately supported by the record.

Because the record reflects that the district court expressly addressed Pruitt's intent and gave well-founded reasons to conclude Pruitt acted with the requisite intent, we **AFFIRM**.