NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0421n.06

Case No. 23-5488

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 24, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| SAMUEL JAMES WEAVER, | ) | TENNESSEE |
| Defendant-Appellant. | ) | OPINION |

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

THAPAR, Circuit Judge. Samuel Weaver fired a gun at Chattanooga police officers as they executed a search warrant at his house. As a result of the search, Weaver pleaded guilty to several drug-trafficking and firearms offenses. He appeals various aspects of his sentence. Because his claims lack merit, we affirm.

I.

Just before dawn, law enforcement officers arrived at Samuel Weaver's house to execute a search warrant. The officers drove up in three vehicles: an armored SWAT-team truck, a police van, and a marked patrol car. As they approached Weaver's residence, officers activated their flashing blue lights and parked about 30 feet from the house. Two of the vehicles also turned on their sirens for about 10 to 12 seconds to make their presence known. All the while, the flashing blue lights on multiple vehicles lit up the Chattanooga dawn.

After the police turned off their sirens, they repeatedly announced themselves over their PA system: "Chattanooga Police Department, search warrant." And to make sure that Weaver heard them, the officers used a hostage-negotiation speaker "capable of being heard through a wall of a residence." R. 76, Pg. ID 541. While one team of officers gave the announcement (for a total of 20 to 25 seconds), another group of officers approached the house. As the officers attempted to enter, they threw a flash-bang grenade inside a window to provide cover.

At some point during this mayhem, Weaver woke up. He grabbed a gun and "fired a gunshot from within the house, which penetrated the front door and lodged in the doorframe." R. 44, Pg. ID 129. Weaver then discarded the gun and attempted to flee through his back door. But he ran into another set of officers in the backyard and returned inside, where he surrendered.

After apprehending Weaver, officers searched his home. They found three loaded guns, 19.3 grams of pure methamphetamine, 52.88 grams of heroin, 117.68 grams of fentanyl, and 154 grams of crack cocaine. Weaver admitted that the firearms and drugs belonged to him. He also confessed that he shot "from inside the residence as the officers were attempting to enter," although he maintained that he thought he was being robbed. R. 44, Pg. ID 130; R. 76, Pg. ID 552. Weaver subsequently pleaded guilty to seven counts, including five drug crimes and two firearms crimes.

At sentencing, Weaver received a series of enhancements. First, because Weaver had several prior convictions, he qualified as an armed career criminal under 18 U.S.C § 924(e). Second, because Weaver had a prior federal drug trafficking conviction, he received an enhanced penalty range for the drug trafficking offenses. *See* 21 U.S.C. § 841(b)(1)(B) and (b)(1)(C). And third, because Weaver shot at the police, he received a six-level sentencing enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting an officer.

Weaver objected both to his classification as an armed career criminal and the application of the six-level enhancement for assaulting a law enforcement officer. Weaver argued that his predicate convictions didn't qualify him as an armed career criminal. And he contended that the six-level enhancement shouldn't apply because he didn't know that the men at his door were police officers.

The district court denied Weaver's objection to his classification as an armed career criminal. It also denied Weaver's objection to the six-level enhancement after hearing testimony from the officer in charge of executing the search warrant. After ruling on the objections, the court sentenced Weaver to 295 months in prison, which was at the bottom of the Guidelines range.

Weaver appealed to this court. While his appeal was pending, the Supreme Court decided *Wooden v. United States*, 595 U.S. 360 (2022). Because *Wooden* held that multiple convictions arising out of "a single criminal episode . . . can count only once under" the Armed Career Criminal Act, *id.* at 363, Weaver likely no longer counted as an armed career criminal. This court remanded for resentencing.

At resentencing, the parties agreed that Weaver could no longer be classified as an armed career criminal. Thus, the court sentenced him to 270 months, which was at the bottom of his new Guidelines range.

Weaver timely appealed.

## II.

Weaver first argues that the district court incorrectly applied the six-level sentencing enhancement for assaulting a law enforcement officer.

A.

We start with the standard of review. Weaver argues that de novo review should apply. On the other hand, the government argues that Weaver waived, invited error, or at the very least forfeited any challenge to the § 3A1.2(c)(1) enhancement by not objecting at his resentencing. This court, for its part, has noted that, while "the standard of review we apply to a district court's application of the Guidelines to the facts is 'somewhat murky,'" "our review of the application of U.S.S.G. §3A1.2(c)(1) to the facts of a given case should be deferential." *United States v. Pruitt*, 999 F.3d 1017, 1020 (6th Cir. 2021) (quoting *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020)). But we need not rule on this issue because Weaver's claims lack merit under any standard of review.

B.

Turning to the merits, Weaver challenges: (1) whether the district court rightly concluded that Weaver "assaulted" the police officers when he fired the gun at them; (2) whether the district court applied the correct standard in assessing Weaver's knowledge that the men at his door were police; and (3) whether the district court rightly concluded that Weaver knew or had reasonable cause to believe that the entrants were police. We address each argument in turn.

(1)

The district court was right to find that Weaver "assaulted" law enforcement officers when he shot at them and thus deserved an enhancement under § 3A1.2(c)(1). This Guideline provides for a six-level increase in a defendant's offense level "[i]f, in a manner creating a substantial risk of serious bodily injury," the defendant "knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1).

- 4 -

Determining whether Weaver assaulted law enforcement officers requires defining the word "assault." We look "to the common-law meaning of criminal assault to interpret the official-victim enhancement's assault element." *Pruitt*, 999 F.3d at 1023. The common law recognizes two forms of criminal assault: "(1) an attempted battery, i.e., an intentional attempt to injure another person; and (2) an act which is intended to, and reasonably does, cause the victim to fear immediate bodily harm." *Id.* (citation and emphasis omitted). Weaver's gunshot falls under the first category.

Weaver's conduct qualifies as attempted-battery assault. The district court found that Weaver "fired a round at the officers." R. 76, Pg. ID 564. The officers were lucky that they didn't get hit, as the bullet "penetrated the front door and lodged in the doorframe" right next to them. R. 44, Pg. ID 129; R. 76, Pg. ID 543. Weaver's conduct thus amounts to an "intentional attempt to injure another person." *Pruitt*, 999 F.3d at 1023.[1] Indeed, shooting at someone is a quintessential example of assault. *See* 2 Wayne R. LaFave, *Substantive Criminal Law*, § 16.3(a) (3d ed. 2023). And courts have repeatedly agreed. *See, e.g.*, *United States v. Bass*, 315 F.3d 561, 566 (6th Cir. 2002) (finding an assault where the defendant was "shooting at two men" (citing *State v. Adams*, 45 S.W.3d 46, 56 (Tenn. Crim. App. 2001))). Thus, the district court didn't err when it found that Weaver committed an assault.

---

[1] Weaver faults the district court for not expressly finding that Weaver "had the specific intent to actually shoot or harm an officer." Appellant Br. 23. True, attempted-battery assault does require "an intent to injure." 2 Wayne R. LaFave, *Substantive Criminal Law*, § 16.3(a) (3d ed. 2023). But it was not necessary for the court to explicitly state what was implicit in its finding that Weaver intended to shoot at the officers. Because our review of the application of the Guidelines to the facts is "deferential," *Pruitt*, 999 F.3d at 1020, the district court's failure to spell out its logic from point A (Weaver shot at the officers) to point B (he intended to harm the officers) is not reversible error.

Weaver argues our decision in *Pruitt* mandates that we remand. He is incorrect. In *Pruitt*, the defendant committed two possible assaults: attempting to fire his gun at the officer, and intentionally causing the officer to fear imminent bodily injury by reaching for the officer's firearm. 999 F.3d at 1024. The district court applied the six-level enhancement based on a vague reference to the defendant's "assaultive behavior." *Id.* at 1025. But the district court in *Pruitt* failed to determine numerous prerequisites for applying the § 3A1.2(c)(1) enhancement: Did the defendant attempt to fire his gun? Did the defendant's attempt to reach for the officer's gun cause a fear of bodily harm, or did the defendant's attempt to shoot his own gun cause this fear? Which theory of assault did the court ultimately rely on? And what was the defendant's intent during this whole encounter? *See id.* at 1024–25. In short, the *Pruitt* court did "not know what conduct the district court determined constituted the assault element of the enhancement and why the district court found that conduct met the definition of assault." *Id.* at 1025. There was too much uncertainty about what conduct the district court found to be an assault.

Here, by contrast, it is easier to discern what conduct the district court determined constituted the assault: Weaver shot at the officers. The court found that when Weaver "realized there were police officers there and they were trying to make entry into his home," he "retrieved a loaded weapon" and "fired a round at the officers." R. 76, Pg. ID 564. Unlike in *Pruitt*, there is no dispute here as to the facts giving rise to the assault. Whether Weaver knew the men were officers is irrelevant to whether an assault occurred. Thus, we find no reversible error in the district court's finding that Weaver "assaulted" law enforcement officials under § 3A1.2(c)(1).

(2)

Next, Weaver argues that the district court used the wrong standard for determining whether he knew (or had reason to know) that law enforcement were at his doorstep.

*See* § 3A1.2(c)(1) (defendant must "know[] or hav[e] reasonable cause to believe" that a person is a law enforcement officer). Weaver argues that the district court erroneously applied an objective rather than subjective test to assess his knowledge.[2]

Weaver is incorrect. The district court concluded that Weaver "realized there were police officers" at his door. R. 76, Pg. ID 564. This was the appropriate way to evaluate Weaver's knowledge: The district court determined that Weaver knew that the men at his door were law enforcement officers.

Weaver attempts to use one out-of-context statement at the sentencing hearing to argue that the district court's subjective inquiry was objective. Weaver points to the judge's statement that "a person in reasonably good health should have been aware that police officers were outside." R. 76, Pg. ID 563–64. To be sure, viewed in isolation, this statement looks objective. But in reality, the judge made such a statement in response to Weaver's claim that he didn't hear the police arrive. The judge didn't find Weaver credible because Weaver was not "comatose when these events took place," nor did he have "a hearing impairment that would have made him less likely to hear and comprehend and understand what an average person would hear, comprehend, and understand." R. 76, Pg. ID 564. In other words, any reasonable person in Weaver's shoes (or bed) would've recognized that law enforcement officials were at his door. It simply wasn't credible for Weaver to claim otherwise.

---

[2] At first glance, Section 3A1.2(c)(1) seems to have both objective and subjective components. Whether a defendant "know[s]" someone is a law enforcement official is a subjective inquiry. But whether a defendant has "reasonable cause to believe" someone is an officer seems like an objective test. After all, it would hinge on whether a reasonable person in the defendant's shoes would know he shot at law enforcement. But even under Weaver's theory that § 3A1.2(c) is purely subjective we affirm.

Weaver also incorrectly contends that the court reversed the burden of proof and required Weaver to show that he wasn't aware of the law enforcement presence. Weaver points to the judge's comments about what an average person would've heard and interprets these comments to mean that the judge required Weaver to prove he lacked awareness. But again, the judge only made these observations in response to Weaver's claim that he didn't hear the police. And the government did bear—and meet—its burden. At sentencing, it called the commander of the unit that conducted the raid to testify to the various signs of the law enforcement presence that morning. After hearing this testimony and Weaver's version of events, the judge found that the government established Weaver's knowledge and did not believe Weaver's claims to the contrary. The district court thus used the right standard to evaluate Weaver's knowledge.

(3)

Third, Weaver claims not to have known that the men at his door were law enforcement officers. But ample evidence supports the district court's finding that Weaver knew or had reasonable cause to know that the men at his door were police. The officers arrived in marked police vehicles, pulling to within 25 to 30 feet of Weaver's residence and no more than 35 to 40 feet—about the length of a school bus—from his bedroom. Each vehicle activated its blue lights as it pulled up to the residence. Further, two of the three vehicles turned on their sirens for 10 to 12 seconds. Finally, officers announced their presence through a PA system that was "capable of being heard through a wall of a residence." R. 76, Pg. ID 541–42. In fact, at the sentencing hearing, the commander of the raid worried that he activated the sirens and started the PA system *too early*, thus exposing the officers for an unnecessary amount of time. In short, the district court had abundant reasons to find that Weaver knew or had reasonable cause to know that police officers were at his door.

Weaver, however, stresses that the whole interaction, from police arrival to gunshot, lasted under two minutes. He emphasizes that he was disoriented after suddenly waking up to loud noises, darkness, and a flash-bang grenade. But we find no reversible error in the district court's determination that two minutes is plenty of time to realize that flashing blue lights, sirens, and PA announcements of a police presence are, indeed, a police presence. And the district court was right to find that Weaver had time enough to orient himself.

Weaver also asks us to credit his repeated denials of having any knowledge of a police presence in light of his truthful admissions to the police about owning the firearms and drugs found during the search. This argument asks us to second-guess the district court's assessment of Weaver's credibility. But we won't do that. Determining credibility is "the bread and butter of district courts." *United States v. Clayborn*, 795 F. App'x 450, 451 (6th Cir. 2020). It's "basically unassailable on appeal." *United States v. Hills*, 27 F.4th 1155, 1196 (6th Cir. 2022) (quotation omitted).

Precedent confirms what the evidence tells us. This court has determined that defendants knew or should've known of a law enforcement presence with similar signs of police to the lights, sirens, and PA announcements here. For example, this court found "ample evidence" that a defendant should've known that he was pursued by police where "two unmarked law enforcement vehicles had blue strobe lights that were activated." *United States v. Woods*, 604 F.3d 286, 293 (6th Cir. 2010). And this court reached the same conclusion when an officer wearing a police uniform stepped out of an unmarked car with a flashing blue light and announced he was police.

*United States v. Hayes*, 135 F.3d 435, 439 (6th Cir. 1998).  So the district court did not err when it applied the six-level enhancement.[3]

* * *

We affirm.

---

[3] Weaver raised one additional challenge here that he didn't raise below:  that the district court shouldn't have applied a penalty enhancement for a previous conviction for a "serious drug felony" under 21 U.S.C. § 841(b)(1)(B).  But Weaver now concedes that *Brown v. United States* forecloses his argument.  *See* 602 U.S. 101, 119 (2024); Reply Br. at 29.